# Brubaker's Administrator *versus* Taylor.

<div style="float:right">76   83<br>187  107</div>

1. When a party is called as a witness by his adversary as on cross-examination under Act of April 15th 1869, sect. 2, leading questions may be put to him and there may be drawn from him any facts or admissions which weaken his case or strengthen his adversary's.

2. The party so called is to be considered, as if originally offered and examined on his own behalf.

3. The testimony of a *party* so called may be contradicted by proof of inconsistent declarations made out of court, without giving him an opportunity of explaining; his declarations, he being a party, are evidence in themselves.

4. The plea of "nil debet," to a *sealed* instrument is bad on general demurrer; but if the party goes to trial without objection, it is not to be treated as a nullity; its effect is the same as upon simple contract.

5. A long time, but less than twenty years, having elapsed from the maturity of a sealed note and bringing suit although not long enough to raise the presumption of payment in law; would with corroborative circumstances justify submitting to the jury to presume payment.    Such circumstances in this case.

May 6th 1874.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

[Brubaker *v.* Taylor.]

Error to the Court of Common Pleas of *Lancaster county :* Of May Term 1874, No. 55.

This was an action of debt brought February 21st 1871, by Mary Taylor against Simon Brubaker, administrator, &c., of Francis Brubaker, deceased.

The cause of action was the following note :—

" Three months after date, I promise to pay to Mary Taylor the sum of thirteen hundred dollars, lawful money of Pennsylvania currency, without interest, for value received. My hand and seal this 1st day of January 1852.

FRANCIS BRUBAKER.    [SEAL.]" .

The pleas were " nil debet and payment."

The case was tried October 27th 1873, before Livingston, P. J. The plaintiff gave the note in evidence and admitted a set-off of $900.    She then rested.

The defendant called the plaintiff as on cross-examination under the 2d section of the Act of April 15th 1869 (Pamph. L. 30, 1 Br. Purd. 624, pl. 17), which *is* as follows—

" A party to the record of any civil proceeding in law or equity, or for whose immediate benefit such proceeding is prosecuted or defended, may be examined as if under cross-examination, at the instance of the adverse party, or any of them, and for that purpose, may be compelled in the same manner, and subject to the same rules for examination as any other witness to testify ; but the party calling for such examination, shall not be concluded thereby, but may rebut it by counter testimony."

The defendant, who was a daughter of the decedent, testified that her father died in 1868, he gave her the note on the day of its date " to show that he had given me $1300, when he is no more : $1000 he had given to my husband and the interest he said he would bestow on me, that made the $1300 ;" her father bought real estate for her from Abraham Kendig for $1300, he sold it again and got the money, it was sold for her.   " My father after he sold the property never asked me for the note, and I never told him that I had destroyed it ; he asked me about the note, and said it was all right, I know nothing particular that occurred in my father's room a night or two before he died ; there was nothing said about it ; I was present with father during his last illness ; Lydia Hauck, my sister, and Spiehlmans were there also during his last illness ; a night or two before father's death I did not go to him and ask him what was troubling him ; he did not say it was this note ; I did not tell him I had burned it ; I did not say so in presence of my sister, Lydia Hauck ; the last conversation I had with him about this note was about a couple of years before his death at my daughter's, Mary Hastings ; he asked to see it ; it was shown to him, and he said it was all right ; I had no con-

[Brubaker *v.* Taylor.]

versation with him on his death-bed, or a few days before his death, about this note, or any note, in presence of Lydia Hauck and George Spiehlman and Mrs. Spiehlman. * * * Father gave husband $1000 to make us all equal; in 1852 father recovered from my husband John Taylor's estate $1300 and gave me this note; on this note I received $900, and that is all."

Lydia Hauck testified: "I am sister of Mrs. Taylor, the plaintiff; I was present during the last illness of my father; my father asked Mrs. Taylor about this note in my presence; she says, 'don't trouble yourselves about it, it will never trouble you;' he says, 'it should never trouble me or anybody else;' she says, 'it won't—didn't I tell you long ago it was destroyed;' he says, 'so it ought! so it ought!' This was a day or so before he died; that was all I heard then; she was sitting beside his bed; I was there also; we had given him up then; I was present when she got the note; I know what it was given for; father told her she shall hold this note till he pays this property he bought of Kendig, and when he does that she shall destroy it or give it to him, she can't keep it any longer."

The defendant then recalled the plaintiff and proposed to ask her the following questions:—

"Did you not tell Spiehlman, your brother-in-law, some time before the death of your father, at Spiehlman's house, in a conversation with him, about this note, that you had told your father what became of the note, that he should not trouble himself about it, that you had destroyed it, or burned it; but told Spiehlman you still had the note in your possession?

"What conversation had you with your sister Spiehlman, the day of your father's funeral, with reference to this note?

"Did you not say to Mr. Spiehlman on the day of your father's funeral, that you were dissatisfied on account of Simon Brubaker, your brother, being the administrator of your father's estate, or becoming the administrator of the estate; that if the estate was not properly settled up by him, and you did not get your rights, you would bring in this $1300, and eat up the whole estate?"

These questions were severally objected to by the plaintiff rejected by the court and bills of exceptions sealed.

There was other evidence on both sides; the questions decided by the Supreme Court are sufficiently presented by that given.

The court, after referring to the facts, charged: * * *

"This case, so far as dates are concerned, is left in obscurity. There are no dates given of the purchase or sale of the Kendig property; or the purchase of the Strasburg house. We take the latter to have been purchased in 1867. It does not appear in the evidence, whether the title of the Kendig property was made to Mrs. Taylor or to Mr. Brubaker; the testimony rather induces

[Brubaker *v.* Taylor.]

the belief that it was made to him, for it is said he bought it, and he sold it again and received the purchase-money.

[" You will remember, that there is no evidence of any payment made in this case, except that which is admitted by the plaintiff and proved by her own testimony, and that of her son, J. Z. Taylor;] nor is it proved or even alleged that in any conversation between her and Francis Brubaker, he stated or alleged that the note, or any greater amount than she admits to have been paid, was paid.

" In an action upon a bond, or a note under seal, such as forms the basis of this action, even if want of consideration were alleged, it would not avail; for want of consideration would be no defence. If Francis Brubaker, being in the exercise of a capable will, freely, and without fraud, or duress (and in this case, there is neither fraud or duress alleged, nor proved), made, sealed and delivered to Mary Taylor, his daughter, the note or instrument in writing sued upon, it was a valid obligation, and might have been enforced against him in his lifetime, after maturity, and may be enforced against his estate, and so much as remains unpaid recovered against his estate in this action." * * *

The verdict was for the plaintiff for $1596.

The plaintiff took out a writ of error and assigned for error the rejection of his offers of evidence and the part of the charge in brackets.

*H. C. Brubaker*, for plaintiff in error, referred to the Act of April 15th 1869, sect 2. A party examined under this act is subject to the same kind of examination as an adversary witness on cross-examination would be. In this case the defendant should have been allowed to examine Mrs. Taylor upon everything concerning the note in question. Mrs. Hauck's testimony was some evidence on the question, and there was error in saying that there was no evidence of payment except from plaintiff and her son; this irrespective of the plea of "nil debet," for that might have been amended and in the Supreme Court will be treated as if it had been : Kelsey *v.* National Bank of Crawford, 19 P. F. Smith 431.

*S. H. Reynolds*, for defendant in error.—The plea being payment, answers to the questions proposed would not tend to show that the note had been paid : 2 Greenleaf Ev. 516.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 25th 1874.

Under the second section of the Act of Assembly of April 15th 1869, Pamph. L. 30, when the plaintiff below was called to the stand as a witness by the defendants they had a right to examine

[Brubaker v. Taylor.]

her as if under cross-examination—put to her leading questions—
and draw from her any facts or admissions which would corroborate
their own case or weaken hers.    The act provides that "the party
calling for such examination shall not be concluded thereby but
may rebut it by counter testimony."    It is evident that she was
to be considered in all respects as if originally offered and ex-
amined as a witness in her own behalf.    We think it clear then
that the questions overruled by the learned court and which form
the subject of the first three assignments of error were entirely
proper.    The answers would either have corroborated the testimony
of Mrs. Hauck, the witness examined by the defendants, or if desired,
Mr. and Mrs. Spiehlman could have been called to contradict her.
If she had really made such admissions, Mrs. Taylor would have had
the opportunity of explaining how she came to make them.    To
this she surely had no right to object.    It was not the case of
contradicting and discrediting an ordinary witness in a material
point by showing inconsistent declarations out of court, when ac-
cording to the well settled rule, such questions are in general neces-
sary in order to give the witness an opportunity of explaining; but
as Mrs. Taylor was the party, these declarations were evidence in
themselves and could be proved without giving such opportunity.
It is supposed, however, that they were not relevant to the issues.
The pleas were *nil debet* and payment.    It is true that *nil debet*
to a declaration on a sealed instrument is bad on general demurrer.
But if the party chooses to go to trial upon it without objection,
it is not to be treated as a nullity: Ziegler *v.* Sprenkle, 7 W. &
S. 179.    It is in effect *not indebted*, the same as in debt on simple
contract.    Surely then if she declared at any time that the note
had been destroyed, and that it would not be brought forward
unless the estate was not properly settled, and she did not get her
rights, it tended to show that there was no existing debt, whether
it had been discharged by payment, release or in any other way.
But even under the plea of payment strictly construed the evi-
dence was admissible.    Nineteen years had elapsed between the
maturity of the note and the institution of this suit, and although
not long enough to raise the presumption of payment in law, yet
quite enough to justify leaving the question to the jury with other
circumstances.    Now these declarations, if made by Mrs. Taylor,
would amply justify the court in submitting to the jury as a question
of fact, to presume that the debt had been paid or discharged.

As to the part of the charge complained of in the fourth as-
signment, as the learned judge evidently referred to payment in
money or its equivalent, we cannot say that it was an error.

Judgment reversed, and a *venire facias de novo* awarded.