# Greenfield, Appellant, *v.* Philadelphia.

*Eminent domain — Widening street — Damages — Evidence — Cross-examination of owner as to price he paid for land—Discretion of court.*

1. A plaintiff in litigation who offers himself as a witness does so generally as to all relevant matters.

2. Whether or not he has testified in chief to facts or circumstances which the opposite party desires to bring out, he may be cross-examined as to them, provided they are relevant, are not strictly speaking matters of defense, and are not of such a nature that, in the judgment of the trial court, it would be confusing to the jury to introduce them at that particular time, and for that reason should be postponed until defendant is putting in his testimony.

3. In such matters much must be left to the sound discretion of the trial judge.

4. In an action against a city to recover damages for the value of land taken in widening a street, the plaintiff who has offered himself as a witness on his own behalf, may be asked on cross-examination what he paid for the land somewhat over a year before, and this is the case although he had not testified as to the value.

5. In such case, the value of the property at the time of the purchase being one of the main factors in question, it is proper to probe plaintiff on the subject of the price he paid, because that price, not too remote from the time of taking, necessarily must be a prime subject for consideration in fixing the value of the property before the appropriation.

*Eminent domain—Taking of property by city—Damages—Uses of property.*

6. Where a strip of land has been taken by a city for the widening of a street, the use for which the property is to be valued is not to be limited to the one to which it is being put by the owner

at the time, but the jury may consider any use to which it may be put which would affect its value.

*Eminent domain—Taking property by city—Damages—Office building—Rental value of office—Space in other buildings—Market value—Speculative value—Act of April 21, 1915, P. L. 159.*

7. Where a strip of land has been taken, for widening a street, from a lot on which an office building is being constructed, the owner, in an action for damages against the city, will not be permitted to show the market value of office space per square feet in office buildings in the general vicinity of the property in question.

8. If such testimony were admitted, there necessarily would be so many factors to be taken into account in determining the net avails to the owner from the rents, that the result of any determination reached, from the testimony as to what the rentals might be, would be speculative in the extreme.

9. The Act of April 21, 1915, P. L. 159, does not apply to such an inquiry inasmuch as "market value of office space per square foot" cannot be said to be an element of benefit or advantage within the terms of the act.

*Eminent domain—Widening street—Benefits—Whole scheme of improvement.*

10. In an action against a city for damages for the taking of a strip of land for the widening of a street, where it appears that there had been a widening of the entire length of the street, and not merely the part in front of plaintiff's premises, the court commits no error in charging the jury that "in determining what, if any, benefits or special advantages have accrued to the land not taken, by reason of the improvement," they "should consider the whole scheme of improvement provided by the ordinance."

Argued January 7, 1925. Appeal, No. 28, Jan. T., 1925, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1923, No. 1669, on verdict for defendant, in case of Albert M. Greenfield v. City of Philadelphia. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from award of jury of view. Before FERGUSON, J.

From the record it appeared that the jury of view awarded plaintiff $40,158.24. The City of Philadelphia

appealed from the award.   Other facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Stanley Folz,* of *Sundheim, Folz & Kun,* for appellant. —It was error to permit the city to cross-examine plaintiff as to the price he paid for the ground.

Prices actually paid are never admissible in chief for any purpose: Schonhardt v. R. R., 216 Pa. 224; Drexler v. Boro., 238 Pa. 376; Penna. Co. v. Phila., 268 Pa. 559.

Evidence of price is never admissible as evidence of market values, either on direct or cross-examination: Pittsburgh, etc., R. R. v. Patterson, 107 Pa. 461; Gorgas v. R. R. Co., 215 Pa. 501, 505; Schonhardt v. R. R., 216 Pa. 224; Neely v. R. R., 219 Pa. 349; Rea v. Pittsburgh R. R., 229 Pa. 106, 116; Drexler v. Boro., 238 Pa. 376; Roberts v. Phila., 239 Pa. 339; Girard Tr. Co. v. Phila., 248 Pa. 179; Davis v. R. R., 215 Pa. 581; Penna. Co. v. Phila., 268 Pa. 559; Wissinger v. Coal Co., 271 Pa. 566.

It was error to charge the jury that the market value should be determined without reference to the purpose for which the land might be used: Stone v. R. R., 257 456; Pittsburgh, etc., R. R. v. Patterson, 107 Pa. 461; Roberts v. Phila., 239 Pa. 339; Cox v. R. R., 215 Pa. 506.

It was error to refuse to permit plaintiff to prove rental value of space in an office building erected on the site: Stone v. R. R., 257 Pa. 456, 462-3; Lynn v. Boro., 80 Pa. Superior Ct. 590, 593; Steere v. Twp., 83 Pa. Superior Ct. 234.

It was error to charge the jury that in determining benefits from the widening it should consider the whole scheme of improvement, in front of plaintiff's property and as it affected not only that, but all the property

along the street affected by the widening: Pittsburgh, etc., Ry. v. McCloskey, 110 Pa. 436; Park Ave. Sewers, 169 Pa. 433; Shimer v. Ry., 205 Pa. 648; Hall v. Ry., 262 Pa. 292.

*Glenn C. Mead,* Assistant City Solicitor, with him *Haines D. Albright,* Assistant City Solicitor, and *Joseph P. Gaffney,* City Solicitor, for appellee.—The cross-examination was proper: Penna. Co. for Ins., etc., v. Phila., 268 Pa. 559; Savings & Trust Co. v. R. R., 229 Pa. 484; East Brandywine, etc., R. R. v. Ranck, 78 Pa. 454; Houston v. R. R., 204 Pa. 321; Rea v. Pittsburgh, 229 Pa. 106.

In estimating the market value of land, everything which gives it intrinsic value is to be considered, and it is not to be limited to a particular use: Allegheny v. Black, 99 Pa. 152; Cummings v. Williamsport, 84 Pa. 472.

The effect on the market value of the property alleged to have been injured by a public improvement should be determined by considering the effect on the property in controversy, of the improvement as a whole: Robbins v. Scranton, 217 Pa. 577.

OPINION BY MR. JUSTICE SCHAFFER, February 2, 1925:

In a proceeding to assess damages for the taking of five feet of plaintiff's property at the southwest corner of 15th and Chestnut streets in the City of Philadelphia for the purpose of widening the latter thoroughfare, the jury in the common pleas rendered a verdict for the defendant, upon which judgment was entered, and plaintiff has appealed.

On March 31, 1884, the City of Philadelphia passed an ordinance widening from fifty to sixty feet that portion of Chestnut Street extending from the Delaware River to the Schuylkill River, the ordinance providing that thereafter it should not be lawful for an owner to erect a new building or to rebuild or alter the front of

any then existing one without making it recede so as to conform to the new lines of the street.

Plaintiff acquired title to the property in question on March 6, 1922, and proceeded to erect thereon a twenty-one story office building, which, within less than a year, he sold to a trust company. In constructing the building, he was compelled under the terms of the ordinance to recede five feet from the former building line and this five feet was appropriated by the city.

When plaintiff was called as a witness in the case, he did not testify in chief as to the value of the property, but, on cross-examination, he was asked the price he had paid for it. Objection was made to the inquiry, which the court overruled. This ruling is assigned as error, appellant contending that it was not proper, first, because he had not testified in direct examination to the value of the property, second, because the purchase was made more than a year before the appropriation, it being alleged that, in the meanwhile, the character of the neighborhood had changed and values greatly increased, and, third, because the purchase included another lot in the rear of the property, on the opposite side of a narrow street. The last reason could be dismissed with the statement that the price of the smaller lot was brought out by his own counsel in redirect examination; this circumstance, however, has no effect on the ruling we are to make.

A party to litigation who offers himself as a witness does so generally as to all relevant matters. Whether or not he has testified in chief to facts or circumstances which the opposite party desires to bring out, he may be cross-examined as to them, provided they are relevant, are not, strictly speaking, matters of defense, and are not of such a nature that in the judgment of the trial court it would be confusing to the jury to introduce them at that particular time and for that reason should be postponed until defendant is putting in his testimony. It is but reasonble that a plaintiff should

not be permitted to withhold from the jury a fact vital to a proper understanding and determination of his case and one which he should disclose (Albrecht v. Erie City, 265 Pa. 453; Smith v. Phila. Traction Co., 202 Pa. 54), or one which would qualify or destroy the effect of the testimony in chief: Quigley v. Thompson, 211 Pa. 107. A plaintiff is on the other hand entitled to present his case in orderly fashion according to his own plan and a defendant should not be allowed to upset his plan by cross-examination as to matters which, while relevant and helpful to defendant, would be apt, if introduced at that particular time, to confuse the minds of the jury. As to such matters defendant should be compelled to wait until he puts in his defense. On this point, as on others having to do with the range of cross-examination, much must be left to the sound discretion of the trial judge: Littieri v. Freda, 241 Pa. 21. The cross-examination of a plaintiff who offers himself as a witness cannot be carried to an extent which would allow the defendant to put in a defense based upon facts of a character different from those which had been testified to in chief, for, as to such defense, he must wait until the plaintiff has rested, at which time he can call him as for cross-examination and question him as to any relevant fact (Malone v. Dougherty, 79 Pa. 46, 51; Boyd v. Conshohocken Worsted Mills, 149 Pa. 363, 372); but the defendant on such cross-examination is not limited strictly to those facts which have been brought out on direct examination; he may ask any questions which are directed toward showing that the plaintiff has not presented all the facts which he should present in advancing his side of the case, and any questions which are intended to show just what the plaintiff's case actually is.

To say that a party to litigation may be cross-examined as to all relevant matters follows as a logical conclusion from the fact that if a party has not been called as a witness in his own behalf he may be put upon

the stand by his opponent and be compelled to testify as under cross-examination: Act of May 23, 1887, P. L. 158, as amended by section 1 of the Act of March 30, 1911, P. L. 35; Dinger v. Friedman, 279 Pa. 8; Brubaker v. Taylor, 76 Pa. 83; Kirkpatrick & Lyons v. Bonsall, 72 Pa. 155. This provision of the law is a wise one and aids the administration of justice. The effect of holding that a plaintiff in a case such as this,—where the method of computing the damages is by comparison of the two factors, what the property was worth immediately before the appropriation and what it is worth immediately after and as affected by the taking,—cannot be asked the price he paid for the property in question but a short time before it was alleged to be damaged, would be to negative the statute and the long-established rule of law out of which it grew and to do away with this most salutary practice looking toward the establishment of facts which are within the knowledge of the parties immediately concerned.

The cross-examination here permitted follows in principle that which was allowed in Albrecht v. Erie City, 265 Pa. 453. There it was held, where the plaintiff was seeking to recover damages from a municipality for personal injuries resulting from a fall on a sidewalk, that it was reversible error to refuse to permit cross-examination of him for the purpose of developing the fact that he had been guilty of contributory negligence. In that proceeding the plaintiff was required to make out a case clear of contributory negligence, here to show as the minuend of his problem of damages the value of his property before the appropriation. We said in that case, "on his direct examination he [plaintiff] could not withhold any evidence. tending to show that he had contributed to the accident by his own lack of care under the circumstances. Whatever, as to this, he failed to disclose, or was not developed on direct examination, it was the right of the defendant to elicit on cross-examination. He could keep nothing back within his own knowl-

edge that barred his right to recover.   If he did so, either voluntarily or by the failure of his counsel to develop it on direct examination, the defendant's right was to call it forth on cross-examination, not as a matter of defense, but as a part of the plaintiff's case, for the consideration of the court and jury, relieving the defendant from making any defense."   Plaintiff in the case in hand could not conceal a most material fact, possibly known only to him, what he had so recently paid for the property, and leave the jury in the dark as to this most important circumstance.

We expressly held in Rea v. Pittsburgh & Connellsville R. R. Co., 229 Pa. 106, 114, that a party plaintiff in a proceeding of the nature which we are now considering may be asked on cross-examination the price he paid for the property, where the time of the purchase was not too remote from the time of the taking.   We there said, quoting from an earlier case (Davis v. Penna. R. R. Co., 215 Pa. 581), "But after a witness has testified in chief......the largest latitude should be allowed on cross-examination......In fact, any and every pertinent question may be put to him on cross-examination which will enable the jury to place a fair estimate on his testimony as to the damages sustained by the plaintiff by the construction of the road through the latter's premises."   In commenting upon the reason for the exclusion of testimony as to the price paid for other properties, the present Chief Justice, speaking for the court, pointed out (p. 116) : "The objection to the admission of testimony of particular sales is placed upon the theory that it would lead to the investigation of 'collateral issues as numerous as the sales.'......It is plain that this does not apply to the admission of testimony concerning a single sale of the very property in controversy."   It was further said in that case (pp. 116, 117) : "If a claimant who has expressed an opinion on the value of his own property may be asked concerning sales of other properties in the neighborhood, for the

purpose of testing his good faith, the question presents itself, why may he not be asked as to a sale of his own property, provided the sale in question is not too remote from the date of the appropriation. Surely in a case like the present where there is evidence showing prima facie a purchase price of $140,000, and the witness claims a value of $1,056,000, or an increase of over 650 per cent in two years and eight months, such an inquiry is relevant to test his 'good faith,' if for no other reason, subject of course to his right to prove any relevant explanatory facts." While it is true we there speak of "a claimant who has expressed an opinion on the value" it is not the fact that he has expressed such opinion which makes the cross-examination proper, as the decision points out, but that, the value of the property at the time of the purchase being one of the main factors in question, it is proper to probe him on the subject of the price he paid, because that price, not too remote from the time of taking, necessarily must be a prime subject for consideration in fixing the value of the property before the appropriation.

In the case at bar, witnesses for plaintiff had fixed the value of the property before the taking as high as $2,549,-685.50, which was $787,185.50 more than he had paid for it, his purchase price being $1,887,500. While it is true this consideration included the other lot, plaintiff himself testified that it was worth $125,000, making the price which he actually paid for the property in question $1,762,500. We have very recently held in tax assessment cases, where the inquiry is almost precisely the same as in cases such as the one we are considering,—the fair market value of the property at a given time,—that the sale price of the particular piece of real estate is to be taken into account by the taxing authorities in fixing the assessment: Kaemmerling's App., 282 Pa. 78.

We are not to be understood as altering the rule that a defendant should not be permitted to put in his de-

fense under cover of cross-examination. In the orderly course of a trial where the defendant wishes to examine the plaintiff as to matters which are purely those of defense, and which were not touched upon in examination in chief, he may call the plaintiff after he has rested as under cross-examination: Kirkpatrick & Lyons v. Bonsall, 72 Pa. 155; Brubaker v. Taylor, 76 Pa. 83. In the case at bar the testimony elicited on cross-examination was as to a fact essential to plaintiff's case, the value of the property before the appropriation, and was not as to a matter strictly of defense. Both from reason and authority, we reach the conclusion that the cross-examination of the plaintiff as to the price he paid was proper and the first and second assignments of error are, therefore, overruled.

The second question brought to our attention by the able counsel for appellant is that the court affirmed one of defendant's points for charge, which stated the law to be "That in estimating the damages sustained by the opening of a street the proper measure is the difference between what the property would bring in the market before the improvement, and what after the improvement was made, without reference to the purpose for which it may be used." In affirming the point, the trial judge added, "You are to take the property as you found it and value it before and after the taking" coupled with the further statement that he had already "told the jury that they may take into consideration the uses to which it may be put." It is argued that this point did not state the true rule which is that, in estimating the damages, the purpose for which the property may be used is a proper element for consideration by the jury in determining market value, and, in support of the argument, Stone v. Delaware, Lackawanna & Western R. R. Co., 257 Pa. 456; Pittsburgh & Western R. R. Co. v. Patterson, 107 Pa. 461, and other cases are cited. The point as presented by defendant was taken from the syllabus in the case of Cummings v. City of Williamsport, 84 Pa.

472. While it is true that the last phrase of the syllabus should more correctly read "without reference to the purpose for which it is being used" we have no doubt that the jury understood thoroughly the true rule in view of the trial judge's positive and clear statement thereof in connection with the affirmance of the actual point as presented. Altogether the jury was given to understand that the uses for which the property was to be valued were not to be limited to the one to which it was being put. Instead of limiting the consideration of the use being made of it, the instruction as amplified by the court opened the door to a consideration of any use to which the property might be put which would affect its value. This was plainly stated by the trial judge to the jury following his affirmance of the point.

Further assignments of error bring before us rulings of the court preventing plaintiff from showing the market value of office space per square foot in office buildings in the general vicinity of the property in question. It is argued that rental value is an element to be considered in fixing market values. While it may be true that the ability to readily rent property at advantageous and profitable figures is an element entering into its market value and one that should be taken into account by witnesses in fixing that value, nevertheless it is somewhat difficult to see how an opinion as to the market value of office space per square foot in a building not yet erected can have any substantial relevancy to the market value, thereby meaning fair selling price, of the land. There necessarily would be so many factors to be taken into account in determining what the net avails would be to the owner from the rents that the result of any determination reached from testimony as to what the rentals might be would be speculative in the extreme. While it was said in Stone v. Delaware, Lackawanna & Western R. R. Co., 257 Pa. 456, 463, that "the rental value might be a proper element to consider in forming an opinion of the market value of the

property under certain conditions," it will be noted that testimony as to rental value was not admitted in that case. Inquiry in the pending case, however, was not as to what net income would be derived from the building, but, so far at least as one of the witnesses was concerned, the query was "what would be the value of office space in a modern steel and stone constructed building of, say, twenty-stories in height; placed on that lot,—the average value of office space on the upper floors." It is difficult to say what such an inquiry as this could elicit on the real question in the case, the value of the entire property, and, so far as the inquiry made of another witness is concerned as to "the market value of office space in office buildings in the general vicinity of 15th and Chestnut streets per square foot," we are unable to see how any answer which might be made to this could aid the jury in determining the question they had to solve. So far as deciding upon the value of the land was concerned, the effect of gross rentals paid would be of no aid. Net rentals of an entire building might be of some assistance in determining its value from the income-producing standpoint, but to permit a witness to testify as to the market value of office space on the upper floors of a building on the lot in question, yet to be occupied by tenants, or to the market value of office space of other buildings in the vicinity, would get the jury out into the wildest realms of speculation on the question of the market value of the property. In Lynn v. Dunmore Borough, 80 Pa. Superior Ct. 590, 593, it was said that the plaintiff could testify as to the rental actually received from the occupants of her property. We are not prepared to say that such testimony is receivable under all circumstances in such a proceeding as this; but, however that may be, the attempt here was not to show rentals received, but the opinions of witnesses as to what they might be in a building such as appellant contemplated erecting.

At the oral argument, appellant's counsel called attention, in connection with these assignments, to the Act of April 21, 1915, P. L. 159, providing that, in all proceedings arising from the exercise of the right of eminent domain, it shall be competent for all witnesses called, when duly qualified, "to state in detail, and costs, all the elements of benefit or damage, which they have taken into consideration in arriving at their opinion," and, "in arriving at their opinion as to the market value immediately after the exercise of the right of eminent domain, to add to their opinion of the market value before such exercise the cost or value of all the elements of benefit or advantage, and to deduct therefrom all disadvantage or damage, in order to arrive at the market value after such exercise of the right of eminent domain and as affected thereby." We are of opinion that this act does not cover the subject embraced in the inquiry propounded in the pending case; "market value of office space per square foot" could not be said to be an element of benefits or advantage within the terms of this enactment, and in fact it was not so offered, but as a separate item. The act just referred to was repealed so far as it relates to townships by the Township Code of July 14, 1917, P. L. 840, 896. We are not called upon to determine at this time what the effect of this partial repeal may be owing to our view that the act has no bearing on the immediate question we are considering.

The last question submitted for our consideration by appellant rose out of the affirmance by the trial judge of a point presented by the defendant which embodied the instruction "In determining what, if any, benefits or special advantages have accrued to the land not taken, by reason of the improvement, you should consider the whole scheme of improvement provided for by the ordinance which includes the widening of Chestnut Street from fifty to sixty feet, not only in front of the property in suit, but also in front of the property to the west as well as to the eastward of the property in suit."

It will be noted that this point confined the attention of the jury in considering the whole scheme of improvement to the special advantages accruing to the land in question. The contention of appellant is that the point as affirmed is out of line with the rulings in Pittsburgh, Bradford & Buffalo Ry. Co. v. McCloskey, 110 Pa. 436; Park Avenue Sewers, 169 Pa. 433; Shimer v. Easton Ry. Co., 205 Pa. 648, and Hall v. Delaware, Lackawanna & Western R. R. Co., 262 Pa. 292, in that it permitted the jury to take into account benefits flowing from the improvement which were common to all the other land affected by the widening of the street. It is difficult to understand how this could be when the instructions were that the jury should consider only the special advantages, if any, to the plaintiff from the improvement. The affirmance of the point was proper, as the jury was entitled to take into account that there had been a general improvement of the entire street, not merely a widening in front of the plaintiff's property. This instruction did not give them a license to assess general benefits and advantage to the property in question, as its language expressly negatives the consideration of such general benefits and advantage. Speaking of a somewhat similar situation in Robbins v. Scranton, 217 Pa. 577, at page 584, we said: "When the trial judge excluded the testimony in regard to the widening and grading of Schnell Street, he prevented the jury from considering the situation as it actually existed when the whole scheme of improvements at that point was completed by the city." We think no adequate or just comprehension of the effect of the improvement on plaintiffs' property could be arrived at unless account was taken of the fact that Chestnut Street, the main business street of the city for its entire length, between the two rivers, was to be widened.

After consideration of all the assignments of error, we think none of them can be sustained.

The judgment is affirmed.