# Reading Coal & Iron Company's Assessment.

*Taxation—Assessments—Coal—Separate tracts — Market value —Public sale—Acts of May 15, 1841, P. L. 393, and July 27, 1842, P. L. 441—Experts' opinion.*

1. Under the Acts of May 15, 1841, P. L. 393, and July 27, 1842, P. L. 441, it is the market value of separate tracts of coal land, if sold at public sale after due notice, which is the basis for determining the value of real estate for the purpose of tax assessment.

2. In fixing the value of such separate tracts, the courts will take into consideration location, condition, environment, probable cost of operating, and the facts that they were contiguous and part of existing mining operations, and could be readily mined from adjacent collieries.

3. A definite number of tons of coal under one piece of surface may have a much greater or less value than the same number of tons under another tract, depending upon the accessibility of the coal, distance from market, and cost of mining.

4. Although an expert witness may admit that, in forming his opinion as to value of coal lands, he did not consider the tonnage of coal capable of being mined from several properties, his opinion will not be disregarded where he testifies that he did take into consideration the number and marketability of veins, proximity of market, quality of coal, and whether the quantity, considered from the standpoint of veins and not of tonnage, was sufficient to support a colliery for a definite number of years.

Argued April 12, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 16, Jan. T., 1927, by Columbia County, from judgment of C. P. Columbia Co., Sept. T., 1922, No. 303, on appeal from tax assessment, in re assessment and valuation of coal lands of the Philadelphia & Reading Coal & Iron Company, situate in Conyngham Township, Columbia County. Affirmed.

Appeal from tax assessment. Before POTTER, P. J., specially presiding.

The opinion of the Supreme Court states the case.

Judgment modifying assessment. Columbia County appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*H. Mont. Smith* and *E. J. Mullen,* with them *G. W. Moon,* County Solicitor, for appellant.—There being no general selling price or market value for lands' in the immediate vicinity of the tracts in question, the best available evidence was the testimony of experts who took into consideration all elements tending to appreciate or depreciate market value: P. & R. C. & I. Co. v. Northumberland Co., 229 Pa. 460; Cowanshannock C. & C. Assessment, 283 Pa. 122; Washington Co. v. Plate Glass Co., 35 Pa. C. C. R. 673.

The general rule in Pennsylvania is that market value means the price or value of an article established or shown by sales, public or private, in the way of ordinary business: Penna. Co. for Ins. on Lives, etc., App., 282 Pa. 69; Cowanshannock C. & C. Co.'s Tax Assessment, 283 Pa. 122; P. & R. C. & I. Co. v. Co. Commissioners, 229 Pa. 460.

*R. S. Hemingway,* with him *John F. Whalen,* for appellee.—The law requires these tracts to be separately valued and assessed: P. & R. C. & I. Co. v. Co. Commissioners, 229 Pa. 460; D., L. & W. R. R. v. Co. Commis-

sioners, 245 Pa. 515; Kemble's Est., 280 Pa. 441; Penna. Co.'s App., 282 Pa. 69; Kaemmerling's App., 282 Pa. 78.

The expert witnesses called by the company were competent and properly qualified: Searle v. L. B. R. R. Co., 33 Pa. 57; Becker v. R. R., 177 Pa. 252; R. & P. Co. v. Balthaser, 119 Pa. 472; P. & R. C. & I. Co. v. Co. Commissioners, 229 Pa. 460; M. R. R. & M. Co. v. Commissioners, 229 Pa. 457.

Sales of comparable lands is the best evidence as to market value: Kemble's Est., 280 Pa. 441; Penna. Co.'s App., 282 Pa. 69; Kaemmerling's App., 282 Pa. 78.

The assessments fixed by the court below should stand: P. & R. C. & I. Co. v. Co. Commissioners, 229 Pa. 460; State Line & Sullivan R. R. Co.'s Taxation, 264 Pa. 489.

Opinion by Mr. Justice Frazer, June 25, 1927:

The Philadelphia and Reading Coal and Iron Company is owner of four tracts of coal land on which it had been assessed, previous to the year 1922, at a total valuation of $331,905, made up as follows: Locust Mountain, $3,105; Ashland Estate, $116,000; Locustdale Estate, $207,200, and Locust Gap, $5,600. In 1922 the county commissioners procured the services of a mining engineer to examine the company's mines, prepare maps and reports, and testify as an expert witness on behalf of the county if necessary, and acting on his report the commissioners increased the valuation of the property in question to more than eleven times the former assessment, or a total of $3,955,257, the valuation placed on the several tracts being as follows: Locust Mountain, $26,250; Locust Mountain (barren), $605; Ashland Estate, $804,502; Locustdale Estate, $3,025,830; Locust Gap, $98,070. At a hearing before the county commissioners, sitting as a board of revision and appeal, the company produced the testimony of two mining engineers who fixed the total valuation at $166,505. The board, after hearing, adopted the figures given by their engineer, fixing the total value at $3,955,257. The com-

pany appealed to the common pleas and, by agreement of counsel, the appeals from the assessments on the four tracts were consolidated in one appeal. After hearing testimony the common pleas placed the total assessment at $452,315, the separate valuations being as follows: Locust Mountain, $3,750; Ashland Estate, $118,900; Locustdale Estate, $319,865; Gap Tract, $9,800. A re-argument was allowed at the request of the county, after which the court affirmed the values it had previously made in its original report and the county appealed.

There were but two questions raised by appellant: First, whether proper, in fixing market values, to consider the tracts separately for assessment purposes without regard to the fact that they were contiguous and part of a mining operation under one ownership; and, second, the correctness of considering evidence of experts who admitted that in forming their opinions they disregarded tonnage quantity of coal as an element of market value.

As to the first question, section 4 of the Act of May 15, 1841, P. L. 393, requires the assessors to value all objects of taxation "according to the actual value thereof and at such rates and prices for which the same would separately bona fide sell." Section 13 of the Act of July 27, 1842, P. L. 441, makes it the duty of the board of revision of taxes in each county to examine the returns of the assessors and inquire whether assessments have been made in conformity to law and determine if the property has been valued at a sum "not less than the same would bring after full public notice, at a public sale, supposing each separate lot or piece or tract of land, with the improvements or the personal property of each individual company or corporation only, were to be sold." Under the above statutes, it is the market value of the separate tracts if sold at public sale after due notice, which is the basis for determining the value of real estate for the purpose of assessment: Phila. & Reading Coal & Iron Co. v. Northumberland County Com-

missioners, 229 Pa. 460, 466, 468; Del., L. & W. R. R. v. Luzerne County Commissioners, 245 Pa. 515, 518.

Consequently it was the duty of the court below to value each separate tract at the price it would bring at public sale after due notice given. In performing this duty, the court, in its original findings and opinion, affirmed appellant's request for finding to the effect that "The coal lands involved in this appeal are located in the southern portion of Columbia County, on the boundary lines between said county and the Counties of Northumberland and Schuylkill and immediately adjoin other lands of the appellants, situated in Schuylkill and Northumberland Counties, all operated and constituting integral parts of the operations of the appellants, known as the 'Bast Colliery' and the 'Potts Colliery' and that said lands lie in what is known as the 'Western Middle Anthracite Field.'" And found as a conclusion of law that "In fixing the valuation upon each of these four tracts, we are taking into consideration as one of the elements of value that these tracts are contiguous, three of them parts of going mining operations, and whether they can be readily, or at all, mined from collieries of the appellant situate on adjoining tracts in other counties."

Referring to its findings of valuations the court said: "In doing so we are bearing in mind the approximate amount of coal in place (not however as to tonnage), location, improvements, quality, conditions and environment, accessibility to markets, transportation facilities, probable cost of operating, as well as any other important factors tending to show us the market value."

With respect to what was known as the Locust Gap Tract, the court stated: "The Gap Tract of seven acres is virgin coal, although small it be. The appellee contends that this tract can be operated from an adjoining colliery located in an adjoining county and owned by the appellant. If this be true, then we are too low in the valuation we have placed upon it. This allegation

is denied by the appellant by saying that there is a fault or dip, or a marked change in the strata underlying this tract which makes its operation from the adjoining colliery an impossibility, and that, because of this fault, it has not been mined before this; that, in order to mine this tract it will be necessary to sink a shaft on it and erect a breaker and all the necessary equipment. If this view is correct, which is supported by the testimony of competent mining engineers, then we think we are not too low in our valuation, taking into consideration the initial cost of opening the mine. It is not possible for us to say whether or not this fault exists, but we think we are justified in accepting the testimony of mining engineers relative to it, who are familiar with the strata in that locality."

A petition for reargument followed and a further hearing obtained and the court, in a supplemental opinion, after argument, said: "In fixing this valuation on the Gap Tract, we inadvertently omitted from our opinion the requirements of the several Acts of Assembly, relative to valuations for purposes of taxation, which provide that each tract must be valued separately at such sum as it would bona fide sell at public sale. We had meant to embrace this in our opinion......

"In placing the valuation of $1,400 per acre on this small tract of seven acres, or a total of $9,800, we may, from our language used, have led counsel to believe that we are considering this small tract in connection with an adjoining colliery. We, in reality, did not so mean it, although, from our language used, after reading it over, we can see how counsel took the wrong meaning from what we said. We meant to then, and mean now, to place a separate and independent value upon this tract as well as upon the other three involved in this controversy, each one being considered as a separate and independent tract of coal land, standing alone and distinct from any other."

We see no just cause for complaint on the part of the county as to the foregoing findings. The court properly concluded that separate valuations of the respective tracts were required by the various statutes hereinbefore referred to, but at the same time, in fixing such values, took into consideration location, condition, environment, probable cost of operating, and the fact that they were contiguous and part of existing mining operations and could be readily mined from adjacent collieries. This conclusion gave appellant the benefit of every inference to which it was properly entitled.

We see no force in the contention that the court below should have disregarded the testimony of experts who admitted that in forming their opinions as to value, they did not consider the quantity, that is, the tonnage, of coal capable of being mined from the respective properties. The witnesses did, however, take into consideration what was more important than actual tonnage, to wit, the number and workability of veins, proximity to market, quality of coal, and whether the quantity, considered from the standpoint of veins and not of tonnage, was sufficient to support a colliery for a definite number of years. It requires no extended argument to show that a definite number of tons of coal under one piece of surface may have a much greater or less value than the same number of tons under another tract, depending upon the accessibility of the coal, distance from market, cost of mining, etc.

This principle was recognized in the early case of Searle v. L. & B. R. R., 33 Pa. 57, and repeated in Becker v. Phila. & Reading R. R., 177 Pa. 260, where the following relevant language appears in the opinion of this court (page 63) : "We do not measure the value of land by such facts. Land may have $4,000 worth of coal per acre in it and yet sell at $40 per acre. When a man has to sell his property, of course he must take the market value for it. That is measured by the custom or common dealing of the country. If it is land, the market value

is measured by the price usually given for such land in that neighborhood, making due allowance for differences of position, soil and improvement. Value may be very approximately estimated in that way, for it is not then founded upon the mere opinion of witnesses, but on the fact of a general market value......Moreover, the offer impliedly requires a degree of refinement in the measure of values, which seems to us totally incompatible with the gross estimates of common life. Though we might have the most accurate calculation of the quantity of coal in the land, yet, without knowing exactly the expense of bringing it to the surface and carrying it to market and the amount likely to be lost in mining and conveying, and the times in which it would be brought out, and the market prices at those times, the quantity would not help us to value the land. The gross estimates of common life are all the courts and juries have skill enough to use as a measure of value. All other measures are necessarily arbitrary and fanciful." See also to the same effect, R. & P. Co. v. Balthaser, 119 Pa. 472, 482; Kemble's Est., 280 Pa. 441, 446.

The value fixed by the court below is fully sustained by the evidence. The opinions of witnesses varied considerably. Those called by the company estimated its value from $65,900 to $251,900, while witnesses called by the county placed the value at $760,000 and $806,575. The court adopted none of these estimates, but fixed its own valuation at $452,315. The conclusion thus reached is amply supported by the evidence and we find no cause for reversal.

The decree is affirmed at appellant's costs.