## Angermann's Appeal

*Erich O. Angermann* and *Raymond J. Sicer*, for appellant.
*John J. Elcock*, for appellee.

KUN, J., June 20, 1932.—This is an appeal of Erich O. Angermann from the assessment of premises No. 1917 Spring Garden Street for the year 1932 at $12,000.

From the proofs presented, the court makes the following

### Findings of fact.

1. The premises involved in the appeal are No. 1917 Spring Garden Street, in the City of Philadelphia. The lot is eighteen feet front by ninety feet in depth to Monteray Street in the rear. The improvements are a three-story brick rooming house consisting of seventeen rooms, three bathrooms, and the building is equipped with electricity and has a hot-air heating system.

2. Under the proofs, the fair market value of premises No. 1917 Spring Garden Street, for the purposes of taxation for the year 1932, is $10,000.

### Discussion

The assessment of the property as reduced by the board of revision of taxes to the sum of $12,000 makes out a prima facie case showing the validity thereof and the complaining owner has the burden of showing by the weight of the evidence that it is excessive. The proceeding before the court is de

novo. In this case, like all others, the court must be guided by the evidence in determining what are proper valuations. If the evidence as to valuation be conflicting, some of it sustaining the valuation fixed by the board of revision, the court would be warranted in so holding, but if all the testimony at the hearing taken together shows the valuation to be too high, it is the duty of the court to find the facts in accordance with the evidence thus produced: Pennsylvania Stave Company's Appeal, 236 Pa. 97; Kemble's Estate, 280 Pa. 441, 447.

The expert called by the appellant expressed the opinion that in the fall of 1931 the fair value of the property was $6800; that he had purchased a similar property next door for $14,100 in 1927, at which time prices were at their peak; that by the fall of 1931 there had been a decline in values in the neighborhood of about fifty per cent. The property in question had been bought by the owner as late as August, 1931, for $6500. The witness further stated that he had in the meantime been obliged to take back the next door property on foreclosure proceedings on a $9000 mortgage which had been placed on it in 1927, and stated that the property was worth $16,000 or $17,000 at that time.

The witnesses for the city stated the value of the property as of the fall of 1931 was $13,000 and $13,300, and stated that the fact that the property had actually been sold in August, 1931, for $6500 would not influence their judgment. It appears to the court that the opinion values given by the witnesses for the city are such as they thought the property in question should be worth in supposed normal conditions and did not consider the fact that the inquiry was as to the actual worth of the property at the time of its valuation for the purposes of taxation. This is shown by the following excerpt from the examination of one of the city's witnesses. After stating that the fact that the property in question was sold as late as August, 1931, for $6500 would not influence his judgment, he was asked by the court, "Why not?" and his answer was "Because I did not consider values of 1931 as the real market value of this property. Any property in fact in Philadelphia sold in 1931 would not be what I consider its real market value. The real estate market was considerably off and sheriff's sales are happening every day and the entire market trend of it is away down. It is not the test of real value."

As pointed out, however, in Kaemmerling's Appeal, 282 Pa. 78, page 81, in this class of cases, following the directions of the Act of May 15, 1841, P. L. 393, Act of July 27, 1842, P. L. 442, and Act of April 19, 1889, P. L. 37, to fix the worth of the property according to the actual value thereof, and at such amount as it would bona fide sell after full public notice at a public sale, this is the legal basis recognized by our statutes for determining the assessable value of real estate, and until the legislature changes this method it is binding not only upon the taxing authorities but upon the courts as well. The court is bound to base its judgment on the actualities in the case relating to the matter in controversy and not on fanciful assumptions of what the facts ought to be or what, indeed, it may be preferable they should be in so-called "normal" conditions.

It seems that the witnesses for the city considered values back in 1927 as more normal. However, the valuation of the property in the instant case must be fixed as of the fall of 1931 up to January 1, 1932, since the taxpayer is having his property assessed for taxation for the year 1932. It may be that the values in 1927 were inflated values and that the present values are the normal values. We are not called upon to indulge in these speculations. Our duty, as has already been indicated according to the legislative mandate, is to

find the market value as of the time of the assessment. In so doing, it is necessary to give consideration to all matters which might affect a possible purchaser and thus influence the market value: P. & R. C. & I. Co. v. Northumberland County Comm'rs, 229 Pa. 460; P. & R. C. & I. Co. v. Commissioners, 250 Pa. 101; Phila. & Reading Coal and Iron Company's Assessment, 290 Pa. 187.

It follows, therefore, that the very factors which the city's experts have excluded from their consideration, such as real estate values being considerably off, sheriff's sales happening every day and the entire market trend being "away down," must be considered by the court.

It was brought out in the testimony that some years back, in the year 1925, the property in question had a first mortgage on it of $18,000, a second mortgage of $3000 and a third mortgage of $2000, an indication of the extent to which financing was indulged in during the so-called peak value years. This same property, after throwing off the palpably inflated values thereon, was, as stated, eventually thrown back on the building and loan association, which in turn sold it to the present owner for $6500 in August, 1931. This fact must be considered in a proceeding like this: Kaemmerling's Appeal, supra, as it must in eminent domain cases: Greenfield v. Philadelphia, 282 Pa. 344, 352.

The intimation that the reduction in assessments in this and other pending cases might cause financial difficulties for the city, while having cautionary effect, cannot absolve the court of its plain duty to make a finding according to the evidence and the requirements of the law which have been referred to. Real estate cannot be made to bear more than its just share of the cost of government, and that just share is to be determined according to its fair value. If conditions require it, other sources of revenue must be found by those charged with that responsibility. So far as the court is concerned, we must do our duty in the premises as laid down for us by the cases cited. See Kaemmerling v. New Castle Township School District, 297 Pa. 44, according to which it appears that an assessment of $256,717 was, following an appeal to the Supreme Court (being Kaemmerling's Appeal, supra), eventually reduced to $51,300.

Bearing in mind our duty under the law to find the actual value of the property limited and defined by market value, a consideration of all the testimony taken at the hearing before us has convinced us the assessment of $12,000 was too high, for which reason we have made the finding that the fair market value of the property in the fall of 1931 to January 1, 1932, for the purposes of taxation for year 1932, was $10,000.

## Conclusions of law and decree

And now, to wit, June 20, 1932, this appeal having come on to be heard under the Act of April 19, 1889, P. L. 37, Sec. 1, upon consideration of the evidence presented, it is ordered and decreed:

1. That this appeal from the action of the Board of Revision of Taxes of Philadelphia in assessing and valuing appellant's property, No. 1917 Spring Garden Street, in the City of Philadelphia, at the sum of $12,000 for the purpose of taxation for the year 1932 is hereby sustained.

2. That the assessment and valuation of No. 1917 Spring Garden Street, Philadelphia, for the purposes of taxation for the year 1932 is hereby made and adjudged to be the sum of $10,000.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within ten days either party may present a form of final decree to be entered in the case.