## Kelly v. Redevelopment Authority of Allegheny County

*Charles F. Dean* and *William Claney Smith*, for plaintiffs.

*Sylvan Libson*, for defendant.

McKENNA, J., November 22, 1961.—This eminent domain case is before us on plaintiff's motion for a new trial following a verdict in their favor in the sum of $130,000, with no damages for delay. The property involved was condemned by defendant, the Redevelopment Authority of Allegheny County, on December 11, 1958. After the condemnation, a board of viewers placed a value on the property of $131,250. Both sides appealed to this court from the award of the viewers, but only the case at the above number and term was tried. This opinion, however, will dispose of both appeals. At the trial before Judge J. Frank McKenna, Jr., and a jury, testimony developing the following facts was produced.

The premises involved consists of land and buildings used as an ice manufacturing plant. It is located at 509 Furnace Street in McKees Rocks, Allegheny County, Pennsylvania. The lot fronts 210 feet on Furnace Street and extends to Charitiers Creek in the rear an average depth of 200 feet. There are three main buildings on the lot referred to in the testimony as "Ice Storage House No. 1," "No. 2" and "No. 3." These contain storage space and machinery used in the manufacture of ice, such as tanks, coils, pumps, etc. "No. 3" is by far the largest of the three buildings. It has a storage capacity of 10,000 blocks of ice, each weighing 348 pounds. The capacity of "No. 2" is 400 blocks of ice cakes, each of which weighs 300

pounds, and that of "No. 1" is approximately the same. In addition to these buildings there is a pump house on the property.

The Kellys, plaintiffs, acquired the property by agreement on March 1, 1952. The deed for same is dated May 1, 1952, and was received on May 5, 1952. They paid $28,000 for it. At the time of acquisition, the plant was not being operated and was in a run down condition because of nonuse and improper care and maintenance. It was then being used as a banana storage plant. Plaintiffs had the plant operating and producing ice about three months after they purchased it. This was accomplished by energetic work on their part and on the part of relatives who assisted them. After this time repairs and improvements were continued for several years.

At the time of the condemnation in December of 1958, it was being operated and was producing ice in cakes or blocks as described above, and in addition "bagged" or crushed ice and smaller blocks of 50 and 25 pounds for sale through ice vending machines. Plaintiffs themselves and witnesses for them described the land, buildings and machinery in some details. They both offered testimony as to fair market value of the plant immediately prior to the condemnation, as did an expert witness for them, one Thomas McCaffrey, Jr.

Counsel for the Authority produced two real estate men as experts who testified as to the value of the plant. Defense witnesses also indicated that ice plants are becoming obsolete with the expanding use of automatic refrigeration. This testimony was contradicted by witnesses for plaintiffs who stated that the business of ice manufacture is not dying. They named customers who create a steady demand for the product, such as hotels and railroads. A witness for defendant, one Thomas J. Scott, an employe of a firm in Dayton, Ohio,

which is engaged in the business of appraising machinery and equipment, said that in his judgment this ice plant had depreciated to the extent of 68 percent.

The values placed on the property immediately prior to the taking by the several witnesses who testified on this subject were as follows:

For plaintiff:

Edward Kelly, $525,000.

Thomas A. Kelly, $510,000.

Thomas McCaffrey, Jr., $450,000.

For defendant:

John C. R. Kelly, $95,000.

John K. Ellis, $93,000.

Following arguments of counsel and the court's charge, the jury, as stated above, returned a verdict in favor of plaintiffs in the sum of $130,000, with no damages for delay. The authority has not taken exception to the verdict, but plaintiffs have filed a motion for a new trial asserting that the following errors require a second hearing.

1. The trial court erred in permitting counsel for the Authority to cross-examine Thomas A. Kelly regarding the purchase price of the property in 1952.

2. Plaintiffs are entitled to damages for delay as a matter of law, and the court should have so instructed the jury.

3. The court erred in excluding the amount of an offer made to the Kellys for the property between the time they acquired it and the date of the condemnation.

4. Counsel for defendant should not have been permitted to introduce testimony as to the identity of the members of the authority. It is asserted that this was prejudicial to plaintiffs that a new trial must be granted.

We shall discuss these in order.

I. *It was proper to permit counsel for the authority to cross-examine the owner, Thomas A. Kelly, as to the price paid for the property by plaintiffs.*

The property was purchased by deed recorded May 5, 1952, for $28,000. It was condemned December 11, 1958, six years and seven months after it had been acquired. The viewers set a value of $131,250 on the property, and Thomas A. Kelly, the owner, who was asked the price paid, said that in his judgment its fair value was $510,000. The jurors were instructed that the purchase price could be considered by them only as effecting the credibility of Thomas A. Kelly and not as evidence of the fair value of the plant. There was no error in this. It is settled law in this Commonwealth that an owner may be asked the purchase price if the acquisition was not too remote.

An owner who has testified to a particular value at the time of taking has no sound reason to conceal the price paid, particularly where he is given free rein in explaining why the property is more valuable at the later date.

The case of Rea v. Pittsburgh & Connellsville Railroad Company, 229 Pa. 106, 78 Atl. 73 (1910), is peculiarly applicable here because of the similarity in the facts in that case to the facts in the case at bar. Mr. Justice Moschzisker said:

"Surely in a case like the present where there is evidence showing prima facie a purchase price of $140,000, and the witness claims a value of $1,056,000, or an increase of over 650 per cent in two years and eight months, such an inquiry is relevant to test his 'good faith,' if for no other reason; subject of course to his right to prove any relevant explanatory facts: . . ." 229 Pa. at 117.

In the instant case, the value testified to by Thomas A. Kelly, $510,000, was about 18 times the purchase

price, $28,000, an increase in value of 1,800 percent. We believe the jury was entitled to know the purchase price as a factor affecting the credibility of Mr. Kelly.

The above language was approved by the Supreme Court in Greenfield v. Philadelphia, 282 Pa. 344, 127 Atl. 768 (1925). In that case, the owner had not testified as to value. He was, nevertheless, asked on cross-examination the price he had paid for the property more than a year before the taking. The objection to the question was overruled and the owner was directed to answer. On appeal, the Supreme Court affirmed this ruling, calling attention to the fact that the purchse price was $1,762,500, whereas witnesses for plaintiff had fixed the value of the property before the taking as high as $2,549,685.50.

Implicit in the rule that an owner may be asked on cross-examination what he paid for the property is the requirement that the time of purchase must not be too remote. Remoteness may be found where there has been a considerable lapse of time, or where there have been important changes in the property or in the neighborhood where it is located.

The lapse of time in the instant case was approximately six years and seven months from May 5, 1952, the date the deed to plaintiffs was recorded, to December 11, 1958, the date of condemnation. There is no stated period under the cases beyond which such testimony cannot be received. It is a matter for the court in the exercise of its judicial discretion. In Lutz v. Allegheny County, 327 Pa. 587, 195 Atl. 1 (1937), the court permitted plaintiff to be cross-examined about the price he paid for the property seven years before the taking.

In Greenfield v. Philadelphia, supra, and Berger v. Public Parking Authority of Pittsburgh, 380 Pa. 19, 109 A. 2d 709 (1954), plaintiff tried to show that the

purchase price was too remote on ground that there had been significant and substantial changes in the character of the neighborhood and the property. What the court said in the Berger case is fully applicable in the case at bar. The court there stated:

"The Greenfield case is on all-fours with the instant case. The Greenfield case and the Rea case once again reiterate that an owner may be asked on cross-examination the price he paid for his property, where the time of the purchase was not too remote from the time of the taking. It also disposes of and completely refutes appellee's contention that a change in the character of the neighborhood and the great increase in value of properties therein between the time of purchase and the time of the taking is a sufficient ground for entirely excluding evidence of the purchase or sale price. Of course the owner has the right to explain or deny or rebut this evidence and to offer evidence of a change in the neighborood or an increase in values of properties therein or any other relevant fact." 380 Pa. 23.

In the case at bar plaintiffs were given every opportunity to show why the property in question was more valuable at the time of taking than it was at the time of purchase. This is in accord with the rule as above stated. The explanation given by plaintiffs may effect the weight which the jury will give to the purchase price, but it cannot serve as a bar to keep such evidence from the jury.

In any event, the admissibility of the purchase price was within the discretion of the trial judge. Mr. Justice Benjamin R. Jones in B. & K. Inc. v. Commonwealth, 398 Pa. 518, 159 A.2d 206 (1960) said:

"The admissibility of such evidence is squarely within the discretion of the trial court and the trial court's action in admitting such evidence should not be disturbed unless such discretion was grossly abused" 398 Pa. 522.

It is our conclusion that the action of the trial judge in permitting this fact to be elicited from plaintiff, Thomas A. Kelly, was proper.

II. *Plaintiffs were not entitled to damages for delay as a matter of law.*

The court charged the jury on this point as follows:

"In addition to the fair market value you may find that the plaintiffs are entitled to compensation for delay in payment. That taking took place two years and four months ago and the Kellys were entitled to their money as of that time, so that ordinarily they would be entitled to compensation for delay in payment. And you may allow them that amount, that compensation, if you see fit. You may use the legal rate of interest, which is six per cent, and for the 28 months that would be 14 per cent. The fact, as I see it, that they leased the premises and are still in possession would not preclude their right to compensation for delay in payment. However, if you find that they were exorbitant in their demands and that they weren't paid at the time of taking because of their own fault, that they weren't paid the fair market value because of their own fault and their own exorbitant demands, then you can refuse to allow them any compensation for delay in payment. But if you do decide to allow them that item, then you can do that."

This is in accord with the rule of law announced by the Supreme Court in Springer v. Allegheny County, 401 Pa. 557, 165 A. 2d 383 (1960). In that case, the court charged the jury in much the same manner as did the trial judge in this case. On appeal, the Supreme Court held that this was not error. Earlier cases on the subject are reviewed in the opinion by Mr. Chief Justice Jones. The principle to be deduced from the cases is that the jury may withhold detention money if it finds that the owner has been unreasonable in his

demand, and that the owner's testimony as to value of the property may, where it is considerably higher than the amount fixed by the jury, furnish to the jury a basis for a finding that an unreasonable demand had been made. Under the circumstances existing in the case at bar, we find that the court's instruction was correct, and that the jury was warranted in withholding detention money from plaintiffs.

In the Springer case, the court cites, in support of its decision, the opinion of Mr. Justice Porter in James v. West Chester Borough, 220 Pa. 490, 69 Atl. 1042 (1908) as follows:

" 'No fault can be found with this instruction as a sound proposition of law. The evidence showed that in the action of trespass brought in 1904 by appellant against the defendant, he laid his damages at the sum of $20,000, and in the testimony in the present case the same amount is claimed. The jury found the actual damages to have been $2,800. Such a discrepancy might well be deemed sufficient to warrant the jury in refusing to allow any additional sum for the delay in making settlement.' " 220 Pa. 499.

In the James and Springer cases, the only evidence of unreasonable demand was the testimony of the owners as to the value of the property. The facts in the case at bar are similar to the facts in those cases and the ruling of the trial judge was correct under those authorities.

Counsel for plaintiffs call our attention to the recent case of Wolf v. Commonwealth, 403 Pa. 499, 170 A. 2d 557 (1961). There, Mr. Justice Benjamin R. Jones, speaking for the court, held that plaintiff was entitled to damages for detention as a matter of law. In that case, however, the owner had not testified as to the value which he placed upon the property prior to the taking. The rule of the Springer case was briefly reaffirmed in the opinion as follows:

"Of course if there was proof of such excessive and unreasonable demands, it would work a forfeiture of Wolf's right to detention damages: Springer v. Allegheny County, 401 Pa. 557, 567, 165 A.2d 383 and cases therein cited."

Thus, the Wolf case may be distinguished from the situation existing here in that both owners testified to the value of the property here involved prior to its condemnation by the authority. This was not the situation in the Wolf case.

III. *The court did not err in excluding the amount of an offer made to plaintiffs.*

The record discloses this testimony in regard to offers to purchase the property. Edward Kelly testified to an offer as follows:

"By Mr. Libson:

Q. "Do you have an offer in writing from City Ice to purchase?"

A. "No, I don't have an offer in writing."

Q. "You never had such an offer, did you?"

A. "No, sir. Not in writing. They are not going to commit themselves and have you walk out."

Later, when Edward Kelly was again on the stand, counsel for plaintiffs made the following statement:

"Mr. Dean: I propose to prove unsolicited an offer was made by one of the largest manufacturers of ice in the country to purchase this plant in 1955 at a price that we are now able to produce."

"The Court: I will not permit evidence of the price but I will permit you to show that an offer was made."

Notwithstanding this ruling, counsel for plaintiffs did not then produce any testimony of offers made.

The court's ruling was squarely in line with a Supreme Court decision on this point. In Whitcomb v. Philadelphia, 264 Pa. 277, 107 Atl. 765 (1919), the

Supreme Court in an opinion by Mr. Justice (later Chief Justice) Kephart discussed this question and ruled as follows:

"The fact to be proven was that offers had been made to buy the land, or a part of it, as a manufacturing site, to show demand at or about the time of taking, not price or value. The individual who communicated the offer, the man to whom it was communicated, and anyone standing by who heard it, would be competent to testify to the fact that an offer had been made but not the amount thereof. It was, therefore, not hearsay." 264 Pa. 283.

Testimony that offers were made for property condemned is admissible to show that the same is desirable and marketable; however, testimony of the amount of an offer by one who did not make it would offend the "hearsay" rule, and the admission of the testimony by the offeror himself would lead to the investigation of collateral matters, and confuse the main issue. See 5 Nichols, Eminent Domain, §21.4 (1).

IV. *Testimony as to the identity of members of the authority was admissible.*

Defendant's counsel called as his witness Sherwood Pine, Director of Allegheny County Redevelopment Authority. Over objection on the part of counsel for plaintiff, the witness was permitted to describe very generally the authority, and to name members of its board. The testimony was as follows:

"By Mr. Libson:

Q. "Mr. Pine, please state what the Redevelopment Authority of Allegheny County is."

A. "The Redevelopment Authority of Allegheny County is a public corporation that is created under the Redevelopment Law of 1945. Its purpose is to carry out slum clearance and urban renewal. And it is com-

posed of five board members who are appointed by the county commissioners."

Q. "Will you kindly name the members of the Redevelopment Authority, please?"

A. "The board chairman is Sidney Ruffin, who is a prominent attorney and bond counsel. The vice-chairman is Richard Wood, who is general counsel and vice-president of the Westinghouse Airbrake. Secretary-treasurer is Regis Aiken, who is also secretary-treasurer of the Steamfitters Union. And there is two members—there are two members, Judge Nathaniel Beck of the county court, Allegheny County Court, and Mr. Clark King, who is executive vice-president of the Allegheny Ludlum Steel Corporation."

Mr. Dean: "If your Honor, please I would like to make a motion at side bar."

(At side bar)

Mr. Dean: "At this time counsel for plaintiffs would like to make a motion for the withdrawal of a juror as based on the testimony of the present witness as being inflammatory."

The Court: "On what basis would it be inflammatory?"

Mr. Dean: "Creating bias prejudice and interest insofar as the standing of the defendant, that is in favor of the defendant, and of no value whatsoever in this case insofar as the law or the merits of it are concerned."

The Court: "I will deny the motion."

There was no error in this. It is common practice for counsel to ask a witness and particularly a party about his age, marital status, family, and employment. Such matters usually have no direct bearing on the issues involved in the case but are considered relevant as they give the jury some knowledge of the individual appearing before it. The testimony above adverted to was of this type. Defendant was entitled to place

674

before the jury some information of its identity. This could not have influenced the jury to award more or less than they would otherwise have allowed to plaintiffs. Counsel for plaintiffs objected that the testimony was inflammatory.

We cannot agree with this. The testimony was relevant and admissible, but, even if it were irrelevant and inadmissible, it was harmless and would not furnish the basis for a new trial.

In conclusion, we hold that the case was well tried, that the issue was fairly submitted to the jury, and that plaintiffs' motion for a new trial must be refused.

## Order

And now, November 22, 1961, the motion for a new trial is refused and it is ordered that judgment be entered upon payment of verdict fee.