Teresa A. McMANAMON, an Incapacitated Person, by her Co–Guardians, James V. Greenhough and Denise Kurzmann, Individually, Appellees,

v.

Edward L. WASHKO and Greater Hazleton Health Alliance d/b/a Hazleton General Hospital d/b/a Hazleton St. Joseph Medical Center d/b/a MRI Dessen Center, Appellants.

Appeal of Edward Washko and Greater Hazleton Health Alliance.

Superior Court of Pennsylvania.

Argued May 24, 2005.

Filed Aug. 31, 2006.

Mark A. Aronchick, Daniel C. Segal and Matthew A. Hamermesh, Philadelphia, for appellants.

Matthew A. Casey and Shanin Specter, Philadelphia, for appellees.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, Edward L. Washko and Greater Hazleton Health Alliance ask us to determine whether the trial court erred when it denied their post-trial motions for a new trial and/or *remittitur* of the verdict

in this personal injury action. We hold the court properly rejected Appellants' multiple claims of trial error; the jury instructions on pain and suffering and the verdict slip were appropriate under Pennsylvania law; and the court properly refused to grant *remittitur* in general or to apply the *remittitur* provisions of the Medical Care Availability and Reduction of Error ("MCARE") Act to this case. Accordingly, we affirm the judgment entered in favor of Appellee, Teresa A. McManamon.

¶ 2 The trial court opinion fully sets forth the relevant facts and procedural history of this case. Therefore, we will only briefly summarize them here. Appellant Washko was driving a motor vehicle for Appellant Greater Hazleton Health Alliance. While in the course of his employment as a courier, Appellant Washko's motor vehicle struck Appellee, a forty-one-year-old single mother of three. Appellee was working as a flag person, for Lagana Construction Company, on a paving project adjacent to the Airport Beltway in Hazle Township. At the time of impact, Appellee was wearing an orange helmet and reflective vest and was carrying an orange flag. The project area was posted with road work warning signs. Appellee suffered serious and permanent physical injuries in the accident, including multiple fractures to her arm, shoulder blade, hip, leg, and foot. She also suffered critical brain injuries resulting in severe and permanent cognitive deficits. Appellee will require continued daily care for the rest of her life.

¶ 3 Trial began on January 12, 2004. The jury returned a verdict in Appellee's favor on January 21, 2004, in the amount of $19,098,341.00. On January 30, 2004, Appellants timely filed a motion for post-trial relief, seeking a new trial on liability and damages or a new trial on damages or *remittitur*. The trial court denied post-trial relief on September 22, 2004. The following day, the court entered an order awarding delay damages of $1,165,914.20, and molding the verdict to include the delay damages. On October 7, 2004, the court entered judgment on the molded verdict in the amount of $20,264,255.20. Appellants filed a timely appeal on October 8, 2004. The court did not order a Rule 1925(b) concise statement of matters complained of on appeal, and Appellants filed none.

¶ 4 On appeal, Appellants raise the following issues for our review:

DID THE TRIAL COURT DEPRIVE APPELLANTS OF A FAIR OPPORTUNITY TO PRESENT THEIR AFFIRMATIVE DEFENSE OF COMPARATIVE NEGLIGENCE BY:

(a) EXCLUDING EXTRINSIC EVIDENCE OF PRIOR INCONSISTENT STATEMENTS OF TWO OF [APPELLEE'S] WITNESSES, AFTER THE WITNESSES DENIED MAKING THE STATEMENTS;

(b) READING A STATUTORY PROVISION CONCERNING THE DUTY OF A DRIVER TO YIELD TO WORKERS IN A CONSTRUCTION ZONE WITHOUT ANY INSTRUCTION ON THE WORKERS' CORRESPONDING DUTY OF CARE, AND REPEATING THE INSTRUCTION THREE MORE TIMES IN RESPONSE TO QUESTIONS FROM THE JURY;

(c) PERMITTING [APPELLEE'S] EXPERT TO TESTIFY ABOUT THE CONCLUSIONS CONTAINED IN AN OSHA REPORT AS SUPPORT FOR HIS OWN OPINION;

(d) PERMITTING INTRODUCTION OF EVIDENCE OF [APPELLANT WASHKO'S] OPINION AS TO THE LEGAL ISSUE OF FAULT;

(e) PERMITTING [APPELLEE] TO GO BEYOND THE SCOPE OF [APPELLANTS'] EXPERT'S DIRECT TESTIMONY AND CROSS–EXAMINE HIM ABOUT HIS OPINION AS TO FAULT?

DID THE CUMULATIVE EFFECT OF THE FOREGOING ERRORS DEPRIVE [APPELLANTS] OF A FAIR OPPORTUNITY TO PRESENT THEIR COMPARATIVE NEGLIGENCE DEFENSE?

DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY ABOUT AND PROVIDING THE JURY WITH A VERDICT SLIP THAT INCLUDED FOUR SEPARATE DESCRIPTIONS OF DIFFERENT ASPECTS OF PAIN AND SUFFERING DAMAGES?

DID THE TRIAL COURT ERR IN REFUSING TO CONSIDER WHETHER A *REMITTITUR* WAS APPROPRIATE PURSUANT TO THE PROVISIONS OF THE MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR ACT, 40 P.S. § 1303.515?

(Appellants' Brief at 5).

■ ¶ 5 When presented with an appeal from the denial of a motion for a new trial, "absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 466, 756 A.2d 1116, 1121–22 (2000).

In *Harman,* the Court noted that the trial court must follow a two-step process in responding to a request for a new trial. The trial court must determine whether a factual, legal or discretionary mistake was made at trial. If the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. Moreover, the Court noted that "[a] new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake."

The Court then set forth an additional two-step analysis for appellate review of a trial court's determination to grant or deny [9] a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was, or was not, made. In so doing, the Court noted that the appellate court must apply the appropriate standard of review. If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. If the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion. The Court reiterated that a trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

[9] The Court specifically held that a review of a denial of a new trial requires the same analysis as a review of a grant of a new trial.

If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis. If the appellate court discerns that a mistake was made at trial, however, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial.

*Ettinger v. Triangle–Pacific Corp.,* 799 A.2d 95, 106 (Pa.Super.2002), appeal de-

nied, 572 Pa. 742, 815 A.2d 1042 (2003) (internal citations omitted).

¶ 6 Appellants' first two issues on appeal involve five (5) separate allegations of trial error, which Appellants contend individually and collectively deprived them of a fair opportunity to present the affirmative defense of Appellee's comparative negligence and necessitate a new trial. We will consider each challenged ruling in the order presented.

## (a) IMPEACHMENT OF WITNESSES GERLOTT AND SHIELDS

¶ 7 At trial, Appellants challenged Appellee's evidence regarding the exact location of the accident. Appellants asserted Appellee was struck because she backed onto the roadway, without taking proper precautions for her own safety. On the other hand, Appellee maintained she was on the berm of the highway, and Appellant Washko was off the roadway when he struck her. In support of her contention Appellee presented two witnesses at trial, Mr. Gerlott, a supervisor for Lagana Construction, and Mr. Shields, the driver of a dump truck that was backing out of the driveway near the site of the accident. Both witnesses testified at trial that they saw the accident, and Appellee was not in the roadway. At trial, Appellants sought to impeach these witnesses by questioning the investigating officer about the witnesses' alleged inconsistent statements "to complete the impeachment." (Appellants' Brief at 19). Appellants purport the witnesses' out-of-court statements made to Trooper Hudson were offered to cast doubt on the witnesses' direct testimony at trial regarding Appellee's location at the time of the incident. Appellants reason the witnesses' investigative statements to Trooper Hudson were offered solely for impeachment purposes, not as substantive evidence. Appellants cite the Pennsylvania Rules of Evidence Rule 801 for the proposition that inconsistent statements offered solely for purposes of impeaching a witness are not hearsay. Appellants also cite Pa.R.E. 613(b), which permits a party to introduce extrinsic evidence of a prior statement, subject to specific procedures. Appellants conclude the court committed prejudicial error in precluding examination of Trooper Hudson at trial regarding the witnesses' prior statements. We disagree.

¶ 8 Initially, we observe Pa.R.E. 801 provides:

### Rule 801. Definitions

The following definitions apply under this article:

(a) Statement. A "statement" is (1) an oral or written assertion, or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

(b) Declarant. A "declarant" is a person who makes a statement.

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

#### Comment—1998

Pa.R.E. 801 is identical to subsections (a), (b) and (c) of F.R.E. 801. It is consistent with Pennsylvania law. F.R.E. 801(d) is not adopted. The subjects of F.R.E. 801(d), admissions and prior statements of witnesses, are covered in Pa.R.E. 803(25), Pa.R.E. 803.1, and Pa.R.E. 613(c).

\* \* \*

b. Declarant

Subsection (b) is consistent with Pennsylvania law. For hearsay purposes, the "declarant" is the person who makes an out-of-court statement, not the person who repeats it on the witness stand.

c. Definition of Hearsay

Subsection (c), which defines hearsay, is consistent with Pennsylvania law, although the Pennsylvania cases have usually used the phrase "out-of-court statement," in place of the phrase "other than one made by the declarant while testifying at the trial or hearing." *See Heddings v. Steele,* 514 Pa. 569, 526 A.2d 349 (1987). The adoption of the language of the Federal Rule is not intended to change existing law.

A statement, other than one made by the declarant while testifying at the trial or hearing (an out-of-court statement), is hearsay only if it is offered to prove the truth of the matter asserted. There are many situations in which evidence of an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted.

Sometimes an out-of-court statement has direct legal significance, whether or not it is true. For example, one or more out-of-court statements may constitute an offer, an acceptance, a promise, a guarantee, a notice, a representation, a misrepresentation, defamation, perjury, compliance with a contractual or statutory obligation, etc.

More often, an out-of-court statement, whether or not it is true, constitutes circumstantial evidence from which the trier of fact may infer, alone or in combination with other evidence, the existence or non-existence of a fact in issue. For example, a declarant's out-of-court statement may imply his or her particular state of mind, or it may imply that a particular state of mind ensued in the recipient. Evidence of an out-of-court statement, particularly if it is proven untrue by other evidence, may imply the existence of a conspiracy, or fraud. Evidence of an out-of-court statement made by a witness, if inconsistent with the witness' testimony, may imply that the witness is an unreliable historian. Conversely, evidence of an out-of-court statement made by a witness that is consistent with the witness' testimony may imply the opposite. *See* Pa.R.E. 613.

Pa.R.E. 801(b), (c). Rule 803.1 in pertinent part states:

**Rule 803.1. Hearsay Exceptions; Testimony of Declarant Necessary**

The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:

(1) Inconsistent Statement of Witness.

(2) Statement of Identification.

(3) Recorded Recollection.

**(1) Inconsistent Statement of Witness**

A statement by a declarant that is inconsistent with the declarant's testimony, and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement.

**Comment—2000**

Subsection (a) is similar to F.R.E. 801(d)(1)(A), except that the Pennsylvania rule classifies those kinds of inconsistent statements that are described therein as exceptions to the hearsay rule, not exceptions to the definition of hearsay. Subsections (b) and (c) are an expansion of the exception that is described in the federal rule.

Pa.R.E. 803.1(1) is consistent with prior Pennsylvania case law. *See Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986) (seminal case that overruled close to two centuries of decisional

law in Pennsylvania and held that the recorded statement of a witness to a murder, inconsistent with her testimony at trial, was properly admitted as substantive evidence, excepted to the hearsay rule); *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992). To qualify as a "verbatim contemporaneous recording of an oral statement," the "recording" must be an electronic, audiotaped, or videotaped recording. *See Commonwealth v. Wilson,* 550 Pa. 518, 707 A.2d 1114 (1998). Inconsistent statements of a witness that do not qualify as exceptions to the hearsay rule may still be introduced to impeach the credibility of the witness. *See* Pa.R.E. 613.

\* \* \*

Pa.R.E. 803.1(1). Rule 613(b) provides:

**Rule 613. Prior Statements of Witnesses**

\* \* \*

**(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if, during the examination of the witness,

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

(2) the witness is given an opportunity to explain or deny the making of the statement; and

(3) the opposing party is given an opportunity to question the witness.

This section does not apply to admissions of a party-opponent as defined in Rule 803(25) (relating to admissions by a party-opponent).

\* \* \*

Pa.R.E. 613(b).

¶ 9 "A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his trial testimony." *Commonwealth v. Bailey,* 322 Pa.Super. 249, 469 A.2d 604, 611 (1983). "Mere dissimilarities or omissions in prior statements ... do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements." *Id.*

¶ 10 An inconsistent statement can be admissible "to impeach a witness' credibility. However, it must be established that the witness, in fact, made the allegedly inconsistent statement." *Commonwealth v. Woods,* 710 A.2d 626, 630 (Pa.Super.1998), *appeal denied,* 556 Pa. 709, 729 A.2d 1129 (1998). "[A] summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own." *Id.* The rationale for this rule is: "[I]t would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." *Commonwealth v. Simmons,* 541 Pa. 211, 245, 662 A.2d 621, 638 (1995).

¶ 11 "The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *B.K. v. J.K.,* 823 A.2d 987, 991–92 (Pa.Super.2003). "Thus our standard of review is very narrow.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudi-

cial to the complaining party." *Hawkey v. Peirsel,* 869 A.2d 983, 989 (Pa.Super.2005) (citing *Turney Media Fuel, Inc., v. Toll Bros.,* 725 A.2d 836, 839 (Pa.Super.1999)).

■ ¶ 12 In the instant case, defense counsel cross-examined Mr. Gerlott and Mr. Shields regarding their discussions with the investigating officer, Trooper Hudson. Using the police report, defense counsel explored the relevant statements of each witness, specifically, with regard to whether each had or had not seen the accident. Both witnesses testified that they did not make or did not recall making the statements contained in the police report. This cross-examination effectively put before the jury any alleged inconsistencies between the witnesses' statements to Trooper Hudson and their trial testimony. The court allowed defense counsel to impeach these witnesses through cross-examination using the police report, even though the defense presented no evidence that either witness had made or adopted the statements in the police report, or that the report contained the witnesses' verbatim statements or anything other than Trooper Hudson's summary and interpretation of each witness had previously said. *See Simmons, supra; Woods, supra.*

¶ 13 Moreover, the court allowed defense counsel to question Trooper Hudson as follows:

DEFENSE COUNSEL: Trooper, did anyone come forward to tell you that they'd [seen] the actual impact between a vehicle and [Appellee]?

PLAINTIFF'S COUNSEL: Objection.

THE COURT: I'll allow it.

[TROOPER HUDSON]: I don't recall anybody telling me that they specifically saw the collision. The witnesses I spoke to told me—

PLAINTIFF'S COUNSEL: Objection.

THE COURT: Sustained.

DEFENSE COUNSEL: Did any of the individuals you ... spoke to, including but not limited to ... Mr. Gerlott or Mr. Shields, give you some information that you felt necessary to include in your report?

[TROOPER HUDSON]: Yes.

PLAINTIFF'S COUNSEL: Objection.

THE COURT: Overruled.

[TROOPER HUDSON]: Yes.

DEFENSE COUNSEL: Was any of the information that you included in your report based on ... information gleaned from those ... individuals; did that assist you in determining where the point of the actual impact or collision was between the motor vehicle and [Appellee]?

[TROOPER HUDSON]: Only in a very general sense.

DEFENSE COUNSEL: And why is that?

[TROOPER HUDSON]: From what I was able to gather, I knew that [Appellee] was flagging traffic. I saw what her responsibilities were. That inherently tells me that she's in a certain vicinity on the roadway or on the berm ... as to where she was exactly at the moment she got struck, nobody was able to offer that to me.

(N.T. Trial, 1/15/04, at 407–408; R.R. at 254a–255a). Although the court allowed this testimony, it refused to permit Trooper Hudson to say specifically what these witnesses had told him during his investigation, because whatever statements they had made to the Trooper Hudson constituted hearsay by a non-party witness. The record makes clear the court gave Appellants a full and fair opportunity, to the extent permissible, to impeach Mr. Gerlott and Mr. Shields through cross-examination and later through the testimony of Trooper Hudson. With respect to Appellants' assignment of error concerning their proposed impeachment of the witnesses through Trooper Hudson, we con-

clude the trial court acted within its discretion to limit the impeachment process. *See B.K., supra.* Further, Appellants have failed to establish the requisite prejudice to justify a new trial on this ground. *See Hawkey, supra.*

### (b) JURY INSTRUCTIONS

■ ¶ 14 Next, Appellants complain the trial court should have instructed the jury on Appellee's duties as a pedestrian and her duty of care for her own safety in the roadway. Appellants requested instructions on the duty of a pedestrian, notwithstanding the right-of-way statute requiring drivers to yield the right of way to any authorized vehicle or pedestrian engaged in work upon a highway or within a highway, as found in 75 Pa.C.S.A. § 3326.[1] Appellants insist the jury instructions, regarding Appellee's and Appellants' relative duties of care, were incomplete as given. Appellants cite several cases for the proposition that a worker should take necessary precautions when working in a roadway and failure to do so may constitute comparative negligence. *See Sloss v. Greenberger,* 396 Pa. 353, 152 A.2d 910 (1959) (stating that individual must use own sense or abide by consequences of carelessness); *Druding v. Philadelphia,* 374 Pa. 202, 97 A.2d 365 (1953) (noting when individual can assure own safety by using senses, operator is not required to take extraordinary precautions); *Copertino v. Chrobak,* 346 Pa. 49, 29 A.2d 504 (1943) (stressing that worker who is inattentive to oncoming traffic can be contributorily negligent if worker fails to take proper precautions for his/her own safety). Appellants complain

the court's instructions as given were erroneous because they suggested to the jury that Appellee had no duty to watch out for her own safety. According to Appellants, Appellee did not have the license to proceed blindly into the roadway without concern for her own safety, despite her right of way under Section 3326.

¶ 15 Appellants further argue the problem with the jury instructions was exacerbated when the trial court simply reread the original "right-of-way" instruction to the jury an additional three times without further elaboration. Appellants insist the court had a duty to give additional jury instructions on the law when the jury indicated confusion. Because the jury's question concerned Appellee's role and duty of care at the worksite, the court's failure to address the jury's obvious confusion created a substantial possibility of an incorrect result. Appellants conclude a new trial with proper jury instructions is warranted. We disagree.

■ ¶ 16 Pennsylvania law states:
A trial court is bound to charge only on that law for which there is factual support in the record. As a general rule, refusal to give a requested jury instruction containing a correct statement of the law relating to the issues raised by the evidence is grounds for a new trial unless the substance of that point has been covered in the court's charge as a whole.
*Santarlas v. Leaseway Motorcar Transport Co.,* 456 Pa.Super. 34, 689 A.2d 311, 312 (1997).

---

1. The statute in relevant part provides:
§ 3326. **Duty of driver in construction and maintenance areas or on highway safety corridors**
(a) **Areas indicated by traffic-control devices.**—The driver of a vehicle shall yield the right-of-way to any authorized vehicle or pedestrian actually engaged in work

upon a highway within any highway or utility construction or maintenance area indicated by official traffic-control devices placed in accordance with department regulations, including advanced warning signs or a vehicle having flashing or revolving yellow lights.
75 Pa.C.S.A. § 3326(a).

¶ 17 We review challenges to jury instructions as follows:

> In examining these instructions, our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Raskin v. Ford Motor Co.*, 837 A.2d 518, 522 (Pa.Super.2003) (quoting *Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995) (internal citations omitted)).

¶ 18 The case of *Abbott v. Onopiuk*, 437 Pa. 412, 263 A.2d 881 (1970), involved a workplace injury involving multiple parties. The appellant argued error in a general jury instruction concerning negligence, claiming the court should have instructed the jury as to the varying legal duties of a contractor, a subcontractor, an independent contractor, and an architect. The Supreme Court rejected this argument, holding that even a broad general charge on the doctrine of negligence is sufficient if it adequately defines the issues for the jury with respect to liability. *Id.* at 417–18, 263 A.2d at 884.

¶ 19 As to Appellants' contention regarding the court's jury instructions on the relative duties of care, the trial court reasoned as follows:

> The primary duty of the trial judge in charging the jury is to clarify the issues that they may comprehend the questions they are to decide. The issues must be clearly defined so as to fully inform the jury and if the charge is wholly inadequate or unclear, or if it has the tendency to mislead and confuse rather than clarify, a new trial will be granted where the charge in question might have been responsible for the verdict. When it comes to points for charge submitted by the parties, as long as the issues are defined accurately and the applicable law correctly reviewed, the court is not required to accept the precise language of the submitted points for charge. Although a trial court need not use the specific language requested by a party, its words must sufficiently and fully convey the rules of law applicable to the case.
>
> Having reviewed the court's instructions in light of the foregoing applicable legal principles, we believe the trial court's charge to the jury satisfied the standards set for the above. The court sufficiently addressed the issue of negligence, explaining fully the concepts of carelessness, ordinary care under the circumstances, and reasonableness. The [court] also spoke to these issues when it charged the jury on the principle of contributory negligence. We dismiss this argument as being without merit.

(Trial Court Opinion, filed September 22, 2004, at 8–9). We have carefully reviewed the jury instructions in this case. Contrary to Appellants' contentions, the court fully charged the jury on the burdens of proof, ordinary care, negligence, and contributory negligence. (N.T. Trial, 1/20/04,

at 756–61; R.R. at 342a–343a). The court included an instruction derived from 75 Pa.C.S.A. § 3326, as follows:

> Under the law of this Commonwealth the driver of a vehicle shall yield the right-of-way to any authorized vehicle or pedestrian actually engaged in work upon a highway within a highway or utility construction or maintenance area indicated by official traffic control devices placed in accordance with department regulations, including advanced warning signs or a vehicle having flashing or revolving yellow lights.

*(Id.* at 762; R.R. at 343a).

¶ 20 Later, the jury asked the court for further instructions in a note that said: "How does the law change as to sign placement and responsibility in response to her responsibility if she was a flag person or cone mover, i.e. sign changes, extra person on roadway, etc." *(Id.* at 824; R.R. at 359a). The court responded by rereading its instruction on 75 Pa.C.S.A. § 3326(a) and then told the jury:

> It is for you the jury to determine whether the foregoing will apply based upon the evidence that was presented during the course of this proceeding.

*(Id.)* In its opinion, the trial court reasoned:

> The court properly instructed the jury on the applicability of Section 3326 of the Vehicle Code. [Appellee] was clearly working on a highway as well as on the driveway leading to All Phase Electric. She was, as part of her duties, obligated to flag the traffic ... and to move the cones around in that area to allow entry to and exit from All Phase's business during the course of the paving project. Proper signs and precautions were in place to notify motor vehicle operators of the road work ahead, and she was appropriately attired for those duties. The code's definition of "highway" found at Section 102 encompasses the area in

which [Appellee] was performing her duties, i.e., "the entire width between the boundary lines of every way public ally maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Given the location of the accident and the warnings present, it is our conclusion that the court's instruction on the applicability of Section 3326 of the Vehicle Code was entirely appropriate.

(Trial Court Opinion at 9).

¶ 21 The jury instructions as given in this case were accurate because they adequately addressed the relative duties of care applicable to work zones, coupled with full instructions on contributory negligence generally. *See Raskin, supra.* There was no reason to instruct the jury as if Appellee had been an ordinary pedestrian, outside a work zone, because those were not the facts of the case. *See Santarlas, supra.* Thus, we conclude the jury instructions as a whole were proper under the circumstances. *See id.* We see no abuse of discretion or error of law controlling the outcome of the case here. *See Raskin, supra.* Accordingly we have no reason to upset the court's decision to deny a new trial on this ground.

### (c) OSHA CONCLUSIONS

¶ 22 Appellants insist Appellee's accident reconstruction expert should not have been permitted to rely on conclusions contained in an OSHA report. Appellants claim the testimony was inadmissible as hearsay under Rules 801 and 802 of the Pennsylvania Rules of Evidence. Appellants contend that, although the Pennsylvania Rules of Evidence have an exception to the hearsay rule concerning information upon which the expert relies, the exception does not apply in this case for two reasons. First, the exception does not apply because an OSHA report is not the type of information generally relied upon by ex-

perts in the field, as required under Pa. R.E. 703. Appellants distinguish *Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515 (1992), because that case involved the expert testimony of physicians who, while expressing their own opinions, made references to reports of other doctors, which comprised only a small portion of the data relied upon by the experts. Appellants argue the present case is different, absent any preliminary evidence that accident reconstruction experts generally rely on conclusions of OSHA investigations. Appellants maintain Appellee's expert should not have been permitted to testify about the OSHA report without first establishing that the information in the report is of the type reasonably relied upon in these circumstances.

¶ 23 Appellants also assert the related hearsay exception does not apply because the expert failed to provide his own analysis concerning OSHA's conclusions.[2] Appellants complain Appellee's expert used another's opinion to bolster his own. Appellants contend Appellee's expert trial testimony lacked "independent or further judgment" to support and add to the OSHA report; that is, the conclusions of the OSHA report were presented without explanation of how they were used in the expert's own analysis. Appellants conclude the testimony of Appellee's expert should have been excluded on these grounds. We disagree.

¶ 24 Rule 702 of the Pennsylvania Rules of Evidence states:

**Rule 702. Testimony by experts**

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training or education may testify thereto in the form of an opinion or otherwise.

**Comment—1998**

Pa.R.E. 702 differs from F.R.E. 702 in that the words "beyond that possessed by a lay person" have been added to make the rule consistent with Pennsylvania law. *See Commonwealth v. Dunkle*, 529 Pa. 168, 602 A.2d 830 (1992).

Adoption of Pa.R.E. 702 does not alter Pennsylvania's adoption of the standard in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), which requires scientific evidence to have "general acceptance" in the relevant scientific community. *See [Dunkle, supra]; Commonwealth v. Nazarovitch*, 496 Pa. 97, 436 A.2d 170 (1981); *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977). In 1993, the United States Supreme Court held that *Frye* was superseded in the federal courts by the adoption of F.R.E. 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038 (2003), a majority of the Pennsylvania Supreme Court rejected the *Daubert* standard and affirmed the applicability of the *Frye* standard in the Pennsylvania state courts.

Pa.R.E. 702 does not change the Pennsylvania rule for qualifying a witness to testify as an expert. *In Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 480–81, 664 A.2d 525, 528 (1995), the Supreme Court stated:

The test to be applied when qualifying a witness to testify as an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If

---

**2.** An expert is not permitted to repeat another's opinion without bringing in his own ex-

pertise. *King v. Stefenelli*, 862 A.2d 666, 674 (Pa.Super.2004).

he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.

Pa.R.E. 702 does not change the requirement that an expert's opinion must be expressed with reasonable certainty. *See McMahon v. Young*, 442 Pa. 484, 276 A.2d 534 (1971).

Pa.R.E. 702 states that an expert may testify in the form of an "opinion or otherwise." Much of the literature assumes that experts testify only in the form of an opinion. The language "or otherwise" reflects the fact that experts frequently are called upon to educate the trier of fact about the scientific or technical principles relevant to the case. *See* F.R.E. 702 advisory committee notes.

▮▮▮▮ Pa.R.E. 702. With regard to all evidence, including expert evidence,

> The basic requisite for the admission of any evidence is that it be both competent and relevant. Evidence is competent if it is material to the issues to be determined at trial, and relevant if it tends to prove or disprove a material fact in issue. The question of whether evidence is admissible is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion.

*Moroney v. General Motors Corp.*, 850 A.2d 629, 632 (Pa.Super.2004), appeal denied, 580 Pa. 714, 862 A.2d 1256 (2004) (citation omitted).

▮▮▮▮ ¶ 25 Pennsylvania law also makes clear:

> In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction ... one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa.Super.2000).

▮▮▮▮ ¶ 26 Additionally, reliance upon reports which are not in evidence, but which are customarily relied upon by experts in the practice of a certain profession, is a well-established exception to the rule against hearsay evidence. *Primavera v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515 (1992). "This exception to the rule against hearsay was adopted in Pennsylvania law in 1971 in *Commonwealth v. Thomas*, 444 Pa. 436, 445, 282 A.2d 693, 698 (1971) and has been applied consistently since then." *Id.* at 518–19.

¶ 27 In the instant case, Appellants filed a motion *in limine* to preclude any reference to OSHA investigations and results as contained in Appellee's expert reports. The gist of the objection was that (1) any reference to OSHA findings was "irrelevant, immaterial, prejudicial ... and based on hearsay documents and self-serving statements submitted by [Appellee's] employer"; (2) the OSHA findings were "immaterial, irrelevant and inadmissible to any claim or defense" between the parties; and (3) "[a]ny findings of OSHA pertaining to [Appellee's] Employer's work site safety has no relevance to [Appellee's] claim against a third party motor vehicle operator who is not governed or controlled in any way by OSHA [or] had any input in its investigation." ([Appellants'] Motion *In Limine*, 12/15/03, at 2–3; R.R. at 34a–35a).

¶ 28 At trial, Appellants registered a general objection to the OSHA report. (N.T. Trial, 1/13/04, at 81; R.R. at 173a). In their post-trial motions, Appellants reasserted their complaint that the OSHA findings were irrelevant. ([Appellants'] Motion for Post–Trial Relief, 1/30/04, at 1–2; R.R. at 392a–393a). In their brief in support of their post-trial motions, Appellants argued for the first time that the OSHA findings were hearsay insofar as Appellee's expert was simply a "mouthpiece declaring the opinion of another." ([Appellants'] Brief in Support of Motion for Post–Trial relief, 3/29/04, at 7–8; R.R. at 407a–409a).

¶ 29 Appellant's argument on appeal, that the OSHA references are not the type of evidence reasonably relied upon by experts in the field of accident reconstruction, was not properly preserved for review. *See Hong, supra.* Further, Appellants did not specifically object to the expert's testimony at trial on the ground that the expert failed to provide his own analysis. Therefore, that argument is waived as well. *See id.* Nevertheless, the record belies that assertion. The trial transcript contains numerous pages of Appellee's expert's independent analysis and opinion. He fully explained how he had used the OSHA report in this context. Initially, Appellant's pleadings alleged negligence on the part of Appellee's employer, not contributory negligence of Appellee. When Appellants raised Appellee's alleged contributory negligence as a claim in the case, Appellants did not abandon their contentions that the accident had been caused by the negligence of Appellee's employer. Therefore, OSHA's findings regarding compliance of the work zone were relevant to the expert's opinion on fault.

¶ 30 Moreover, in response to the hearsay argument contained in Appellants'

post-trial motion, the trial court reasoned as follows:

[Appellants] first challenge the trial court's denial of their motion *in [l]imine* to exclude reference to the OSHA investigation and findings pertaining to the work site. It is their position that these represent hearsay [because] no OSHA representative testified at trial as to these findings. Nor, contend [Appellants] was this information probative of the issue of whether [Appellant] Washko was negligent. It is [Appellee's] position that [because] their accident reconstruction expert, Corporal Ronald Baade of the Pennsylvania State Police, relied in part on the OSHA findings to support his conclusion that proper signage was in place to warn motorists of the work zone ahead, such evidence does not constitute hearsay. Both [parties] acknowledge the admissibility of this kind of evidence as an exception to the hearsay rule. [Appellants], of course, dispute the applicability of this exception to the instant case. In *Primavera[, supra]* ... cited by [Appellee] the following rationale was set forth by the Superior Court:

[An expert's opinion may be based upon years of professional experience, schooling and knowledge, not all of which can be presented on a first-hand basis in court. Moreover, ... ] the expert is assumed to have the mastery to evaluate the trustworthiness of the data upon which he or she relies, both because the expert has demonstrated his expert qualifications and because the expert regularly relies on and uses similar data in the practice of his or her profession.

*[Id.* at 519.]

We find the challenged testimony regarding OSHA's investigation and findings to clearly fall within the bounds of

**1276**

this exception and find no error in allowing it. The OSHA findings can be considered the type customarily relied upon by experts in the field of accident reconstruction. [Appellants] had the opportunity to cross-examine and, for that matter, to submit their own challenge at trial to the OSHA report. We, therefore, dismiss this argument as being without merit.

(Trial Court Opinion at 3). After careful review of the applicable law, we conclude Appellants' position is both waived and without merit.

### (d) APPELLANT WASHKO'S STATEMENTS OF FAULT

█ ¶ 31 Appellants next argue Appellant Washko's statements made during his deposition and during cross-examination, regarding whether he accepted any responsibility for the accident or blamed others, were legal conclusions, not judicial admissions or admissions of fact by a party. Appellants contend these statements were inadmissible and constituted reversible error. We disagree.

█ ¶ 32 "A lay witness may express an opinion if it is based upon his own perceptions and helpful to a clear understanding of his testimony or the determination of a fact in issue." *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa.Super. 218, 496 A.2d 762, 766 (1985). "Although the admission of an opinion on an ultimate issue of fact does not constitute error *per se,* ... if its admission would confuse, mislead, or prejudice the jury, it should be excluded." *Id.* "In order for a ruling on evidence to constitute reversible error, it 'must be shown not only to have been erroneous, but harmful to the party complaining.'" *Id.* at 765. The appellant must prove the court erred in admitting the challenged evidence and that the appellant was unduly prejudiced thereby. *Id.*

The decision whether testimony constitutes fact or opinion may be difficult, for there is no litmus test for fact versus opinion. Often testimony that might be classified as opinion is nevertheless admitted almost as a matter of course. Statements such as "it made an awful racket," "the weather was miserable", "he looked drunk", are in a sense all opinions, but a little attention to our every day way of speaking will show that they are more accurately classified as shorthand, or compendious, statements of fact, based on personal observation.... In such cases the experienced trial judge will admit the statement.

*Lewis v. Mellor,* 259 Pa.Super. 509, 393 A.2d 941, 946 (1978) (internal citations omitted). Nevertheless, "Personal knowledge remains a prerequisite to the admissibility of an expression of lay opinion." *Id.* at 949.

¶ 33 In support of its decision to admit Appellant Washko's statements, the trial court provided the following:

On the issue of the admissibility of a part of [Appellant Washko's] deposition testimony, we begin by noting the pertinent parts of Pennsylvania Rule of Civil Procedure No. 4020, Use of Deposition at Trial. Subsection (a) allows any part of all of a deposition, so far as admissible under the rules of evidence, to be used against any party who was present or represented at the taking of the deposition or who had notice thereof. Subsection (a)(4) speaks to the use of only part of a deposition and permits any other party to introduce all of it which is relevant to the other part introduced. It is clear from our reading of this rule and the arguments presented here at this post-trial stage that [Appellants'] position is unsustainable. Rule 4020 gives any other party permission to in-

quire more fully on the matter at issue by reading the full deposition testimony into the record. Moreover, [Appellants] would have had ample opportunity at trial to inquire as to the rest of the deposition testimony or to elicit responses that would provide a more complete account of the matter, whether it be on the issue of [Appellant's] employment or his account of the accident.

The remaining two arguments seem to generally challenge whether [Appellant Washko] should have been permitted to offer testimony on the issue of fault, his own or that of [Appellee's] employer or All Phase Electric where the paving project was being performed. While we agree that the jury is reasonable, as the ultimate trier of fact, to decide the issue of fault, or negligence, we do not agree that a party witness should, therefore, be prevented from explaining his position as to how the accident occurred. Clearly, the jury would have already assumed that [Appellant Washko] denied responsibility. His testimony, by deposition or at trial, is not objectionable merely because it encompasses an ultimate issue to be decided by the jury. The trial court has the obligation to scrutinize such testimony to determine whether it will cause confusion or prejudice. Having reviewed the record, we find no basis for [Appellants'] arguments and therefore dismiss them.

(Trial Court Opinion at 6–7) (internal citations omitted). We accept the court's analysis. Appellant Washko consistently denied responsibility for the accident. His statements were based upon personal knowledge and were expressions of his personal opinion. *See Lewis, supra.* Moreover, Appellant Washko had ample opportunity to elaborate at trial and explain his perception as to how the accident occurred. We see no prejudice to Appellants in this regard.

### (e) TROOPER HUDSON'S OPINION ON FAULT

¶ 34 Appellants next assert Appellee should not have been allowed to elicit Trooper Hudson's opinion of fault on cross-examination. Appellants challenge the scope of Appellee's cross-examination, claiming it exceeded the reasonable scope of the trooper's direct testimony. Appellants maintain their direct examination was limited to Trooper Hudson's factual investigation of the accident and his opinion on two specific factual issues: the location of Appellee and the speed of Appellant Washko's vehicle. Direct examination by the defense did not address Trooper Hudson's opinion as to fault. Appellants maintain the testimony elicited on cross-examination was not reasonably calculated to qualify or diminish the impact of direct examination. Instead, Appellants conclude, the cross-examination concerned a separate and distinct point regarding fault, and should have been excluded. We disagree.

¶ 35 The scope and limits of cross-examination are within the trial court's discretion where the right of cross-examination "includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters the witness testified to on direct examination." *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369, 1371 (1984). Pennsylvania Rule of Evidence 611(b) provides:

**Rule 611. Mode and order of interrogation and presentation**

\* \* \*

(b) Scope of Cross–Examination

Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in

the exercise of discretion, permit inquiry into additional matters as if on direct examination. A party witness in a civil case may be cross-examined by an adverse party on any matter relevant to any issue in the case, including credibility, unless the court, in the interests of justice, limits the cross-examination with respect to matters not testified to on direct examination.

\* \* \*

### Comment—1998

\* \* \*

Pa.R.E. 611(b) differs from F.R.E. 611(b). F.R.E. 611(b) limits the scope of cross-examination of all witnesses to matters testified to on direct and matters bearing on credibility, unless the court in its discretion allows inquiry into additional matters as if on direct examination. This has been the traditional view in the Federal courts and many State courts. The cross-examiner does not lose the opportunity to develop the evidence because, unless the witness is the accused in a criminal case, the cross-examiner may call the witness as his or her own. Therefore, the introduction of the evidence is merely deferred.

Pa.R.E. 611(b), which is based on Pennsylvania law, applies the traditional view in both civil and criminal cases to all witnesses except a party in a civil case. *See Woodland v. Philadelphia Transportation Co.*, 428 Pa. 379, 238 A.2d 593 (1968); *Commonwealth v. Cessna*, 371 Pa.Super. 89, 537 A.2d 834 (1988). In applying the rule of limited cross-examination, the Supreme Court said in *Conley v. Mervis*, 324 Pa. 577, 188 A. 350 (1936) that "cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it or tending to develop facts which have been improperly suppressed or ignored by the [witness]." *See also*

*Commonwealth v. Lopinson*, 427 Pa. [284,] 300, 234 A.2d [552,] 562 (1961).

Under Pa.R.E. 611(b), a party in a civil case may be cross-examined on all relevant issues and matters affecting credibility. *See Agate v. Dunleavy*, 398 Pa. 26, 156 A.2d 530 (1959); *Greenfield v. Philadelphia*, 282 Pa. 344, 127 A. 768 (1925). However, in both of those cases, the Court stated that the broadened scope of cross-examination of a party in a civil case does not permit a defendant to put in a defense through cross-examination of the plaintiff. The qualifying clause in the last sentence of Pa.R.E. 611(b) is intended to give the trial judge discretion to follow this longstanding rule.

\* \* \*

Pa.R.E. 611(b). Additionally, Pennsylvania Rule of Evidence 704 states:

### Rule 704. Opinion on ultimate issue

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

### Comment—1998

Pa.R.E. 704 is substantively the same as F.R.E. 704(a) and is consistent with Pennsylvania law. F.R.E. 704(b) has not been adopted.

\* \* \*

Pennsylvania law allows expert opinion testimony on the ultimate issue. *See Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978); *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 A. 125 (1936). As with lay opinions, the trial judge has discretion to admit or exclude expert opinions on the ultimate issue depending on the helpfulness of the testimony versus its potential to

cause confusion or prejudice. *See Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420 (1987); *Commonwealth v. Brown*, 408 Pa.Super. 246, 596 A.2d 840 (1991).

\* \* \*

Pa.R.E. 704. Thus, Pennsylvania law allows expert opinion testimony on the ultimate issue. *Id.*

▮ ¶ 36 Concerning Appellants' argument regarding the cross-examination testimony of Trooper Hudson, the trial court said:

This witness, [Appellants] claim, was called by [the defense] as an expert to offer his opinion as to the point of impact and the speed of [Appellant Washko's] van, not as to cause. Yet, on cross-examination, he testified that he felt [Appellant Washko] was at fault because there were signs warning of road work ahead and because [Appellee] was properly attired with a reflective vest, a hard hat and a flag. (N.T. [Trial, 1/15/04,] at 463). This cross-examination testimony, [Appellants] contend, amounts to an intrusion into the jury's province to decide who was at fault. Furthermore, [Appellants] argue, this testimony exceeded the scope of Trooper Hudson's direct testimony.

Both briefs cite *Bennett v. Graham*, [552 Pa. 205,] 714 A.2d 393 (1998). In that case, a police officer's deposition testimony that one party had run a red light and was the cause of the accident had been admitted at trial, despite the fact that he had not witnessed the accident but had only responded to the radio call reporting it. Nor had the officer been offered as an expert. On appeal, the Supreme Court first noted the rule that a police officer who does not personally witness an accident is not competent to testify as to the cause thereof because said opinion would be highly speculative and an invasion of the jury's prerogative. *[Id.* at 209, 714 A.2d at 395.] The

Court then note[d] the exception to this rule as explained by the Superior Court in *McKee by McKee v. Evans*, 380 Pa.Super. 120, 551 A.2d 260 (1988); *i.e.*, when the officer has been qualified as an expert. Despite [Trooper Hudson's] status as an expert at trial, however, [Appellants] here argue that Trooper Hudson's opinion as to fault would not have been based on first hand knowledge or any expertise he held. [Appellee] counters by arguing that *Bennett* undermines rather than supports [Appellants'] argument [because], in this case, Trooper Hudson had been called by [Appellants] as an expert accident reconstructionist.

We agree with [Appellee] that there is nothing improper in allowing the expert called by the defense to testify as to the cause of the accident. [Appellants] offered him as their expert on accident reconstruction and had the opportunity on direct and re-direct to challenge his testimony at trial. In addition, we remind [Appellants] that Pa.R.E. 704 provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Pennsylvania law allows expert opinion testimony on the ultimate issue. The trial judge has the discretion to admit or exclude ultimate-issue testimony offered by an expert, and in so doing, must weigh the helpfulness of the testimony against its potential to cause confusion or prejudice. *[Kozak, supra].*

As to whether the cross-examination exceed[ed] the scope of Trooper Hudson's direct testimony, we likewise dismiss this argument. Pa.R.E. 611(b) does permit the court, in its discretion, to allow inquiry into additional matters as if on direct examination. The right of cross-examination extends beyond the sub-

jects testified to on direct and includes the right to examine the witness on any facts tending to refute inferences or deductions arising from matters the witness testified to on direct. Our review of this trial transcript leads us to conclude that the cross-examination testimony elicited by [Appellee] was well within the bounds of what was covered on direct. As an expert, Trooper Hudson was called to explain his expert opinion [of] what he believed happened on May 30, 2001. In developing his analysis and reaching his conclusions, we believe he would have naturally established, in his own mind, the how and why of the accident. That, we believe, would encompass a determination of cause. We, therefore, dismiss [Appellant's] second post-trial motion argument. . . .

(Trial Court Opinion at 3–5). We accept the trial court's analysis. At trial, Appellants presented Trooper Hudson as a qualified expert accident reconstructionist. His opinion on how the accident occurred encompassed what caused the accident. The testimony Appellee elicited on cross-examination was both permissible as expert opinion and reasonably calculated to qualify or diminish the impact of direct examination. Therefore, we have no reason to disturb the court's decision.

¶ 37 Based upon the foregoing we conclude Appellants' contentions regarding their ability to present a full comparative negligence defense neither individually nor collectively warrant a new trial. *See Harman, supra; Ettinger, supra.* Therefore, Appellants' issues one and two are rejected.

¶ 38 In their third issue on appeal, Appellants claim the verdict slip erroneously included four separate descriptions of different aspects of the same pain and suffering damages. Appellants cite *Carpinet v. Mitchell,* 853 A.2d 366, 373–74 (Pa.Su-

per.2004), *appeal denied,* 586 Pa. 706, 889 A.2d 1212 (2005), for the proposition that error occurs when the trial court instructs the jury on separate damages for "past, present, and future pain and suffering; past, present and future embarrassment and humiliation; disfigurement; past, present and future loss of enjoyment of life," because the categories are duplicative and some may even be inappropriate. Appellant claims the categories of "pain and suffering" damages given to the jury in the present case are comparable to those in *Carpinet.* Although the jury was not asked to include number amounts for each category, Appellants maintain the verdict form broke up what has traditionally been a single line item of damages. Appellant concludes the verdict sheet was flawed in this regard and unduly was prejudicial, such that a new trial on damages is necessary. We disagree.

¶ 39 Assessment of damages is within the province of the jury who, as finders of fact, weigh the veracity and credibility of the witnesses and their testimony. *Dranzo v. Winterhalter,* 395 Pa.Super. 578, 577 A.2d 1349, 1352 (1990), *appeal denied,* 526 Pa. 648, 585 A.2d 468 (1991). A jury verdict on damages is set aside when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered. *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 4 (1994).

¶ 40 Itemized damages are acceptable under Pennsylvania law. *See Catalano v. Bujak,* 537 Pa. 155, 642 A.2d 448 (1994) (involving personal injury action where nine separate categories of damages were itemized on verdict slip and Supreme Court affirmed verdict for plaintiff); *DeVita v. Durst,* 167 Pa.Cmwlth. 105, 647 A.2d 636 (1994) (involving person-

al injuries sustained in automobile accident where verdict slip itemized ten separate damage categories, and Commonwealth Court affirmed verdict for plaintiff). "If special findings would add to a logical and reasonable understanding of the issue, it is within the discretion of the trial judge to grant such a request." *Krock v. Chroust,* 330 Pa.Super. 108, 478 A.2d 1376, 1381 (1984).

■ ¶ 41 Pennsylvania law allows compensation for loss of life's pleasures as a component of pain and suffering. *Carpinet, supra* at 371. With respect to damages for pain and suffering and disfigurement, however, Rule 223.3 of the Pennsylvania Rules of Civil Procedure states:

**Rule 223.3. Conduct of the Trial. Actions for Bodily Injury or Death. Jury Instructions on Noneconomic Loss**

In any action for bodily injury or death in which a plaintiff has raised a claim for a damage award for noneconomic loss that is viable under applicable substantive law, the court shall give the following instructions to the jury.

The plaintiff has made a claim for a damage award for past and for future noneconomic loss. There are four items that make up a damage award for noneconomic loss, both past and future: (1) pain and suffering; (2) embarrassment and humiliation; (3) loss of ability to enjoy the pleasures of life; and (4) disfigurement.

The first item to be considered in the plaintiff's claims for damage awards for past noneconomic loss and for future noneconomic loss is pain and suffering. You are instructed that plaintiff is entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience, and distress that you find (he)(she) has endured from the time of the injury until today and that plaintiff is also entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience, and distress you find (he)(she) will endure in the future as a result of (his)(her) injuries.

The second item that goes to make up noneconomic loss is embarrassment and humiliation. Plaintiff is entitled to be fairly and adequately compensated for such embarrassment and humiliation as you believe (he)(she) has endured and will continue to endure in the future as a result of (his)(her) injuries.

The third item is loss of enjoyment of life. Plaintiff is entitled to be fairly and adequately compensated for the loss of (his)(her) ability to enjoy any of the pleasures of life as a result of the injuries from the time of the injuries until today and to be fairly and adequately compensated for the loss of (his)(her) ability to enjoy any of the pleasures of life in the future as a result of (his)(her) injuries.

The fourth and final item is disfigurement. The disfigurement that plaintiff has sustained is a separate item of damages recognized by the law. Therefore, in addition to any sums you award for pain and suffering, for embarrassment and humiliation, and for loss of enjoyment of life, the plaintiff is entitled to be fairly and adequately compensated for the disfigurement (he)(she) has suffered from the time of the injury to the present and that (he)(she) will continue to suffer during the future duration of (his)(her) life.

In considering plaintiff's claims for damage awards for past and future noneconomic loss, you will consider

the following factors: (1) the age of the plaintiff; (2) the severity of the injuries; (3) whether the injuries are temporary or permanent; (4) the extent to which the injuries affect the ability of the plaintiff to perform basic activities of daily living and other activities in which the plaintiff previously engaged; (5) the duration and nature of medical treatment; (6) the duration and extent of the physical pain and mental anguish which the plaintiff has experienced in the past and will experience in the future; (7) the health and physical condition of the plaintiff prior to the injuries; and (8) in case of disfigurement, the nature of the disfigurement and the consequences for the plaintiff.

Note: These instructions may be modified by agreement of the parties or by the court, based on circumstances of the case.

Pa.R.C.P. 223.3 (Adopted Aug. 20, 2004, effective Dec. 1, 2004. Amended Dec. 1, 2004, imd. effective). Even before this Rule was adopted, however, Pennsylvania law authorized separate damages for disfigurement in personal injury actions. *See, e.g., Rogers v. Moody,* 430 Pa. 121, 126, 242 A.2d 276, 279 (1968) (stating: "Disfigurement is a disablement as much an item of damages as a broken leg. Therefore, a jury is required to evaluate it as an objective loss, instead of allowing only a nominal sum as a weak salve to poultice an injured feeling."). *See also Mendralla v. Weaver Corp.* 703 A.2d 480 (Pa.Super.1997).

¶ 42 Finally, we observe the appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed. *Carpinet, supra.*

¶ 43 In the instant case, Appellants seem to challenge both the court's jury instructions on damages **and** the format of the verdict slip. The trial court instructed the jury on the relevant "pain and suffering" damages in the following manner:

> If you find that the Defendants are liable to the Plaintiff, that is, if you find that the Defendants were negligent and their negligence was a substantial factor in causing the Plaintiff's harm, then you must find the amount of money damages which you believe will fairly and adequately compensate the Plaintiff for all the physical and financial injury you find she has sustained as a result of this accident. The amount which you award today must compensate the Plaintiff completely for the damage you find she sustained in the past, as well as any damage you believe she will sustain and continue to sustain in the future.

\* \* \*

> If you find the Defendants liable, that is negligent, and that their negligence was a substantial factor in causing the Plaintiff's harm, the Plaintiff is entitled to be fairly and adequately compensated for such physical pain, mental anguish, discomfort, inconvenience and distress as you find she has incurred from the time of the accident until today.

> If you find the Defendants liable, that is negligent, and that they were negligent, and that their negligence was a substantial factor in causing the Plaintiff's harm, the Plaintiff is entitled to be fairly and adequately compensated for such physical pain, mental anguish, discomfort, inconvenience and distress as you believe she will endure in the future as a result of the injuries you find were related to this accident.

> If you find the Defendants liable, the Plaintiff is entitled to be fairly and adequately compensated for such embar-

rassment and humiliation as you believe she has endured and will continue to endure in the future as a result of her injuries.

If you find the Defendants liable, the Plaintiff is entitled to be fairly and adequately compensated for the past, present, and future loss of her ability to enjoy any of the pleasures of life as a result of injuries that you find were as a result of the Defendants' negligence.

If you find the Defendants liable, the disfigurement that the Plaintiff sustained as a result of this accident is a separate item of damages as recognized by the law. Therefore, in addition to such sums as you award for pain and suffering and for embarrassment and humiliation, the Plaintiff is entitled to be fairly and adequately compensated for the disfigurement you find she has suffered as a result of this accident, and will continue to suffer for the future duration of her life.

(N.T. Trial, 1/20/04, at 766–68; R.R. at 344a–345a). These instructions were again given to the jury in part, following closing argument. *(Id.* at 832–33; R.R. at 361a). As to the oral jury instructions, Appellants fail to direct our attention to the appropriate place in the record where they objected to these instructions on pain and suffering damages. *See Carpinet, supra.* Moreover, our review of the record indicates Appellants did not object either time the court gave these instructions. Thus, Appellants waived their challenge to the spoken jury instructions on damages for pain and suffering. *See id.* Nevertheless, we see no error in the instructions as given. *See Raskin, supra.*

■ ¶ 44 Regarding the jury's verdict sheet, it read as follows:

## JURY VERDICT INTERROGATORIES

1.  Do you find that the Defendant, Edward L. Washko, was negligent?

Yes  X          No  ____

If you answer Yes to Question 1, proceed to Question 2. If you answer No. to Question 1, the Plaintiff cannot recover and you should not answer any further questions and should return to the Courtroom.

2.  If you found that the defendant, Edward L. Washko, was negligent, was the negligence of the Defendant[ ] a substantial factor in bringing about the injuries to the Plaintiff Teresa McManamon?

Yes  X          No  ____

If you answer Yes to Question 2, proceed to Question 3. If you answer No to Question 2, the Plaintiff, Teresa McManamon, cannot recover and you should return to the Courtroom.

3.  Do you find that the Plaintiff, Teresa McManamon, was contributorily negligent?

Yes  ____          No  X

If you answer Yes to Question 3, proceed to Question 4. If you answer No to Question 3, proceed to Question 6.

4.  Was the contributory negligence of the Plaintiff, Teresa McManamon, a substantial factor in bringing about her own injuries?

Yes  ____          No  ____

Proceed to Question 5.

5.  If you answered Questions 1, 2, 3, and 4 Yes, taking the combined negligence that was a substantial factor in bringing about the Plaintiff's injuries as 100%, what percentage of that causal negligence was attributable to the Defendant, Edward Washko, and what percentage was attributable to Plaintiff, Teresa McManamon?

Percentage of causal negligence attributable to Defendant, Edward Washko ............ ____%

Percentage of causal negligence attributable to Plaintiff, Teresa McManamon ........... ____%

Total ........... ____%

If you find that the Plaintiff's causal negligence was greater than fifty (50%) percent, do not answer Question 6. If you find that Plaintiff's causal negligence was fifty (50%) percent or less, proceed to Question 6.

6. State the amount of damages sustained by the Plaintiff, Teresa McManamon, as a result of this accident, without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the parties.

(a) Past Medical Expenses ............. $ 918,271

(b) Future Medical Expenses ........... $ 6,794,236

(c) Past Lost Earnings................. $ 40,834

(d) Future Lost Earning Capacity ....... $ 345,000

(e) Past, Present and Future Pain and Suffering, Embarrassment and Humiliation, and Loss of Enjoyment of Life $10,000,000

(f) Disfigurement .................... $ 1,000,000

Total .......................... $19,098,341

Signed

Jury Foreperson

Date: 1/21/04

(Jury Verdict Interrogatories, filed 1/21/04; R.R. at 388a–391a). Appellants direct our attention to one place in the trial transcript where they allegedly preserved their challenge to the verdict sheet. The record of the objection states:

THE COURT: Note an objection to the verdict slip on behalf of defense counsel on the list of damages items as set forth in the final question.

(N.T. Trial, 1/20/04, at 823; R.R. at 358a). Assuming without deciding, Appellants' objection was specific enough to preserve the issue for appeal, we reject Appellants' challenge to the propriety of the verdict sheet. Contrary to Appellants' contention, the verdict form presented a single line item for Past, Present and Future Pain and Suffering, Embarrassment and Humil-

iation, and Loss of Enjoyment of Life. There was no improper "separation of categories" as in *Carpinet, supra.* Moreover, the separate line item for disfigurement was appropriate. *See Rogers, supra.* Appellants' reliance on *Carpinet* is misplaced.

¶ 45 In response to this issue, the trial court said:

[C]ontrary to being prejudicial or likely to encourage excessive awards, the itemized verdict sip has actually been viewed as helpful. The Superior Court, in fact, had previously acknowledged that special findings on a verdict could add to a logical and reasonable understanding of the issue. In any case, it is within the sound discretion of the trial court....

(Trial Court Opinion at 11). We agree. As well, special jury interrogatories can often assist the court in making decisions regarding *remittitur.* We conclude Appellants' complaints regarding the form of the verdict sheet merit no relief.

¶ 46 In their last issue on appeal, Appellants invoke the MCARE Act. Appellants argue the court should have done a *remittitur* analysis under the MCARE Act, which requires a court determining a request for *remittitur,* in a case involving a defendant health care provider, to consider the impact of the damage award on access to health care in the community. Appellants maintain that Appellant Greater Hazleton Health Alliance is a health care provider and that fact places it within the ambit of the Act. Appellants concede the Act as a whole relates to medical malpractice cases, but insist it applies whenever a health care provider is a party in a case. Appellants further claim Section 515 of the Act is not limited to medical malpractice cases because the section does not state it is so limited. Although the accident occurred and the present case commenced before the effective date of the Act (March 20, 2002), Appellants submit the Act

should be deemed retroactive to all cases pending as of the effective date of the Act, because Section 515 is purely procedural. Appellants conclude the court committed reversible error when, without a hearing, the court refused to apply the MCARE Act to their request for *remittitur* in this case. We disagree.

¶ 47 Generally, a jury award for compensatory damages should be reduced only if that award is plainly excessive or exorbitant. *Sprague v. Walter,* 441 Pa.Super. 1, 656 A.2d 890, 909 (1995), *appeal denied,* 543 Pa. 695, 670 A.2d 142 (1996). Excessiveness of damages is not determined merely by the size of the verdict. *Id.*

> We review the trial court's decision to deny [a] request for *remittitur* for an abuse of discretion or error of law. *Remittitur* is justified only in limited instances ... where the verdict plainly is excessive, exorbitant, and beyond what the evidence warrants ... or where the verdict resulted from partiality, prejudice, mistake, or corruption.
> On appeal, we review whether the jury verdict so shocks the sense of justice such that the trial court should have granted *remittitur* as a matter of law. We ... must review the record in light of the evidence accepted by the jury. Our Supreme Court reiterated these principles as follows: "In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." *Ferrer v. Trustees of University of Pennsylvania,* 573 Pa. 310, 343, 825 A.2d 591, 611 (2002)....

*Smalls v. Pittsburgh–Corning Corp.,* 843 A.2d 410, 414 (Pa.Super.2004), appeal denied, 579 Pa. 704, 857 A.2d 680 (2004) (some internal citations omitted). If the verdict bears a reasonable resemblance to the damages proven, we will not upset it

merely because we might have awarded different damages. *Dranzo, supra.*

¶ 48 The MCARE Act applies to medical professional liability in Pennsylvania and states in its preliminary provisions as follows:

§ 1303.102. **Declaration of policy**

The General Assembly finds and declares as follows:

(1) It is the purpose of this **act** to ensure that medical care is available in this Commonwealth through a comprehensive and high-quality health care system.

(2) Access to a full spectrum of hospital services and to highly trained physicians in all specialties must be available across this Commonwealth.

(3) To maintain this system, medical professional liability insurance has to be obtainable at an affordable and reasonable cost in every geographic region of this Commonwealth.

(4) A person who has sustained injury or death as a result of **medical negligence** by a health care provider must be afforded a prompt determination and fair compensation.

(5) Every effort must be made to reduce and eliminate medical errors by identifying problems and implementing solutions that promote patient safety.

(6) Recognition and furtherance of all of these elements is essential to the public health, safety and welfare of all the citizens of Pennsylvania.

40 P.S. § 1303.102 (emphasis added). The statute's preliminary definitions in relevant part state:

§ 1303.103. **Definitions**

The following words and phrases when used in this **act** shall have the meanings given to them in this section unless the context clearly indicates otherwise:

\* \* \*

"Claimant." A patient, including a patient's immediate family, guardian, personal representative or estate.

\* \* \*

"Health care provider." A primary health care center or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center and except, as to section 711(a),[2] an officer, employee or agent of any of them acting in the course and scope of employment.

\* \* \*

"Medical professional liability action." Any proceeding in which a medical professional liability claim is asserted, including an action in a court of law or an arbitration proceeding.

"Medical professional liability claim." Any claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided.

\* \* \*

"Patient." A natural person who receives or should have received health care from a health care provider.

\* \* \*

[2] 40 P.S. § 1303.711 [pertaining to medical professional liability insurance].

40 P.S. 1303.103 (emphasis added).

¶ 49 Section 1303.501 sets forth the scope of Chapter 5 of the MCARE Act:

§ 1303.501. Scope

This chapter relates to **medical professional liability.**

40 P.S. § 1303.501 (emphasis added). The policy of Chapter 5 of the MCARE Act states:

§ 1303.502. Declaration of policy

The General Assembly finds and declares that it is the purpose of this chapter to ensure a fair legal process and reasonable compensation for persons **injured due to medical negligence** in this Commonwealth. Ensuring the future availability of and access to quality health care is a fundamental responsibility that the General Assembly must fulfill as a promise to our children, our parents and our grandparents.

40 P.S. 1303.502 (emphasis added). Chapter 5 defines a "health care provider" as follows:

§ 1303.503. Definitions

The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

\* \* \*

"Health care provider." A primary health care center, a personal care home licensed by the Department of Public Welfare pursuant to the act of June 13, 1967 (P.L. 31, No. 21),[2] known as the Public Welfare Code, or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and an officer, employee or agent of any of them acting in the course and scope of employment.

\* \* \*

[2] 60 P.S. § 101 *et seq.* [repealed]. 40 P.S. § 1303.503 (emphasis added).

¶ 50 With respect to *remittitur*, Section 1303.515 of Chapter 5 of the Act states:

**§ 1303.515. Remittitur**

**(a) General rule.**—In any case in which a defendant health care provider challenges a verdict on grounds of excessiveness, the trial court shall, in deciding a motion for remittitur, consider evidence of the impact, if any, upon availability or access to health care in the community if the defendant health care provider is required to satisfy the verdict rendered by the jury.

**(b) Factors and evidence.**—A trial court denying a motion for remittitur shall specifically set forth the factors and evidence it considered with respect to the impact of the verdict upon availability or access to health care in the community.

**(c) Abuse of discretion.**—An appellate court reviewing a lower court's denial of remittitur may find an abuse of discretion if evidence of the impact of paying the verdict upon availability and access to health care in the community has not been adequately considered by the lower court.

**(d) Limit of security.**—A trial court or appellate court may limit or reduce the amount of security that a defendant health care provider must post to prevent execution if the court finds that requiring a bond in excess of the limits of available insurance coverage would effectively deny the right to appeal.

40 P.S. § 1303.515.

¶ 51 The interpretation and application of a statute is a question of law. *Wilson v. Transport Ins. Co.,* 889 A.2d 563, 570 (Pa.Super.2005). "As the question in this [issue] is one of law, our standard of review is *de novo* and our scope of review is plenary." *Warren v. Folk,* 886 A.2d 305, 306 (Pa.Super.2005).

¶ 52 The principles governing statutory interpretation state:

Our object is to ascertain and effectuate the intention of the General Assembly. When the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning. In attempting to ascertain the meaning of a statute, we must consider the intent of the legislature and examine the practical consequences of a particular interpretation. We presume the legislature did not intend a result that is absurd and unreasonable. In construing legislative intent, this Court may look to the occasion and necessity of a statute, the circumstances in which it was intended, the mischief to be remedied, the object to be attained by the law, former law on the same subject and the consequences of a particular interpretation.

*Robert Half Intern., Inc. v. Marlton Technologies, Inc.,* 2006 PA Super 145, ¶ 22, 902 A.2d 519, 526. In explaining the distinction between ordinary negligence and medical negligence, this Court has said:

Although the basic elements of both ordinary negligence and medical malpractice are the same, medical malpractice has distinguishing characteristics. Medical malpractice is further defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising **from the rendition of professional medical services.** The underlying elements of negligence in a medical malpractice claim, mirroring those of a basic negligence claim ... are more specifically described as a duty owed by the physician to the patient, a breach of that

duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.

*Yee v. Roberts,* 878 A.2d 906, (Pa.Super.2005), appeal denied, —— Pa. ——, 901 A.2d 499 (2006).

■ ¶ 53 The instant case is one involving ordinary negligence arising out of a motor vehicle accident. *See id.* This case does not even tangentially implicate a contractual relationship between Appellee and Appellants for medical services. Appellee was not Appellants' patient at the time of the accident. Although Appellant Greater Hazleton Health Alliance might meet the definition of a health care provider under the MCARE Act, that does not mean any and all claims against it necessarily fall under the provisions of the MCARE Act. This auto accident was wholly unrelated to any classification of Appellant Medical Health Care Alliance as a health care provider under the MCARE Act. In short, the present case does not involve liability-producing conduct arising from the rendition of professional medical services. *Id.*

¶ 54 Therefore, we decline to extend the reach of the MCARE Act to cases wholly unrelated to medical professional liability; that is, to injuries not due to medical negligence. The plain language of the MCARE Act and its purpose make clear it was not intended to cover the ordinary negligence claims in this case.

¶ 55 In response to this issue, the trial court reasoned:

Before we proceed any further, we find [Appellant's] reliance on the Medical Care Availability and Reduction of Error Act inapplicable. It applies to medical malpractice cases and was not enacted until March 20, 2002.

As correctly noted by [Appellant], the standard we must use in determining whether *remittitur* should be granted is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption. *Haines v. Raven Arms,* 536 Pa. 452, 640 A.2d 367 (1994). And as pointed out by [Appellee], reversal of an excessive verdict award is within the sound discretion of the trial court. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (1971). Unless the circumstances of the award cry out for judicial interference, it is the duty of the court to enforce the jury's verdict. *Daley v. John Wanamaker, Inc.,* [317 Pa.Super. 348,] 317 [464] A.2d 355, 358 (1983).

We are unpersuaded by [Appellants] arguments. We do not believe [the jury's verdict] is excessive, but rather a fair and reasonable reflection of the severity of her physical and emotional injuries. The record is replete with evidence of her past, present, and future medical difficulties. She undoubtedly suffered great pain and discomfort at the time of the accident and thereafter during her hospitalizations, surgeries, procedures and rehabilitation. The impact of her physical injuries has reached deep into her life and has left her in need of daily care and attention as well as continued rehabilitation and physical therapy. She is left with scarring and is generally unable to enjoy the normal pleasures of life that she had experienced prior to the accident. The verdict, we believe, fairly represents the totality of her injuries, both physical and emotional, and compensates her for the monetary losses that are part of this tragedy. Nor do we believe the verdict represents the jury's prejudice, partiality, mistake or corruption. *[See] Haines, supra.*

(Trial Court Opinion at 12–13) (internal citations omitted). We agree with the trial court. This case is what it is, a tragic auto accident appropriately compensated, based upon the evidence presented. Given the particular circumstances of this case, we see no reason to disturb the court's decision to deny Appellants *remittitur* or a new trial on any of the grounds presented.

¶ 56 Based upon the foregoing, we hold the court properly rejected Appellants' multiple claims of trial error; the jury instructions on pain and suffering and the verdict slip were appropriate under Pennsylvania law; and the court properly refused to grant *remittitur* in general or to apply the *remittitur* provisions of the MCARE Act to this case. Accordingly, we affirm the judgment entered in Appellee's favor.

¶ 57 Judgment affirmed.